[Filed April 26, 1886.]

## STATE EX REL. WILLIAM S. SHAW *v.* JOEL WARE, COUNTY CLERK.

MANDAMUS—NOTICES OF ELECTIONS—DUTY OF COUNTY CLERK.—Under a statute prescribing that the county clerk shall, at least forty days before any general election, make out and deliver to the sheriff of his county notices of election, naming the offices to be filled, etc., the duty thus imposed is imperative, and may be enforced by *mandamus.*

SAME—RELATOR—REAL PARTY IN INTEREST—PUBLIC DUTY.—Where the question is one of public right, and the object of the *mandamus* is to procure the enforcement of a public duty, the people are the real party, and the relator need not show that he has any special interest in the result, it being sufficient that as a citizen and voter of the ·county he has a general interest in the execution of the law.

CIRCUIT JUDGE—TERM OF OFFICE—VACANCY.—The term of office of a circuit judge, under the constitution of this state, is six years, and when a vacancy occurring within the term is filled by election, the person so elected holds, not for the full period of six years, but only for the remainder of the unexpired term. WALDO, C. J., dissenting.

LANE COUNTY.    Defendant appeals.    Affirmed.

*E. B. Watson* and *George F. Washburn,* for Appellant.

*W. R. Willis* and *O. F. Paxton,* for Respondent.

LORD, J.  This is a proceeding for a *mandamus* brought by the state of Oregon upon the relation of William S. Shaw, who is alleged to be a citizen and voter of Lane County, Oregon, to compel the defendant and appellant, as clerk of Lane County, Oregon, to correct his notices of election for the general election to be held in said county on the first Monday in June, 1886, by naming therein the office of circuit judge of the second judicial district to be filled thereat.  Upon the presentation of the petition, an order was made by the judge that an alternative writ of *mandamus* issue directed to the defendant, commanding him to correct said notices of election by nam-

ing the office of circuit judge to be filled at said general election, or show cause why he has not done so. Upon the return day, the defendant returned said writ with his answer annexed thereto, in which he denied all the material allegations in said petition, and for a further and separate defense, in substance alleged: That at the general election held in the second judicial district of the state on the first Monday in June, 1880, Hon. James F. Watson was duly elected judge of said district by the legal voters thereof, and thereafter duly qualified as such judge, and entered upon the discharge of the duties of said office, and continued so to act until about the first day of February, 1882, when he resigned said office; that on or about said last date, Hon. John Burnett was duly appointed and commissioned by the governor of the state as judge of said district, and continued so to act by virtue of the same until the first Monday in July, 1882; that on the first Monday in June, 1882, at a general election held in said district, Hon. Robert S. Bean was duly elected judge of said district by the legal voters thereof, and thereafter duly qualified as judge of said district, and entered upon the discharge of the duties of said office, and ever since said date has been and now is the duly elected and qualified judge of said district; that he has not died nor resigned said office, but is now discharging the duties thereof, and his six-years term of office will not expire until the first Monday in July, 1888. The defendant further alleges that his reasons for not naming the office of circuit judge for said district in the notices of election to be held in said county on the first Monday in June, 1886, are that there is no circuit judge of said district of the state to be elected at said election. To the separate answer of the defendant, the plaintiff demurred upon the ground that it did not state facts sufficient to constitute a defense to said writ, or any reason why a

peremptory writ should not issue. The court sustained the demurrer, and the defendant refusing further to plead or answer, it was ordered that a peremptory writ issue directed to the defendant, commanding him to immediately correct said notices of election by naming therein the office of circuit judge of said district, to be filled at the general election in June, 1886, etc. From this order and judgment the defendant appeals to this court.

Our statute provides that the county clerk shall, at least forty days before any general election, make out and deliver to the sheriff of his county notices of election, naming the offices to be filled, etc. (Code, 566, sec. 4.) No objection is raised but what the duty which this section of the statute imposes is ministerial and imperative, and may be enforced by *mandamus*. But it was questioned at the argument whether the relator had such an interest in the matter as would sustain the proceeding. The case presented is for the enforcement, not of a private but of a public right. The relator has no special interest as distinct from the public to require the performance of this duty, but he has an interest in having the duty performed in common with other members of the community. Is this sufficient? Upon reason and authority, we think it is. Mr. High says: "As regards the degree of interest upon the part of the relator, requisite to make him a proper party on whose information the proceeding may be instituted, a distinction is taken between cases where the extraordinary aid of *mandamus* is invoked merely for the purpose of enforcing or protecting a private right, unconnected with the public interest, and those cases where the purpose of the application is the enforcement of a purely public right, where the people at large are the real party in interest. And while the authorities are conflicting, yet the decided

weight of authority supports the proposition that, where
the relief is merely for the protection of private rights,
the relator must show some personal or special interest
in the subject-matter, since he is regarded as the real
party in interest, and his right must clearly appear. On
the other hand, where the question is one of public right,.
and the object of the *mandamus* is to procure the enforce-
ment of a public duty, the people are regarded as the real'
party, and the relator, at whose instigation the proceed-
ings are instituted, need not show that he has any legal
or special interest in the result, it being sufficient to show
that he is a citizen, and as such is interested in the exe-
cution of the law." (High on Legal Remedies, sec. 431;
*People* v. *Halsey*, 53 Barb. 547; *People* v. *Collins*, 19 Wend.
56; *County of Pike* v. *State*, 11 Ill. 202; *City of Ottawa* v..
*People*, 48 Id. 233; *School Trustees* v. *Ball*, 71 Id. 559;.
*State* v. *County Judge*, 7 Iowa, 186; *Hamilton* v. *State*, 3.
Ind. 452; *State* v. *Gracey*, 11 Nev. 223; *State* v. *Eberhardt*,.
14 Neb. 201.) That the defendant should discharge cor--
rectly the duties of his office in respect to the particular
matter here sought to be enforced is a subject-matter in
which the relator, as a citizen and voter of the county,.
has a general interest, and in the absence of any other
vital objection affecting the remedy by *mandamus*, that
interest is of itself sufficient to enable him to maintain
this proceeding. Notice to the electors lies at the foun-
dation of any popular system of government. Our laws in
respect to elections are framed upon this system; and the
duty enjoined upon the clerk by our statute in "naming
the offices to be filled" in the election notices recognizes.
the importance of such a requirement. Nor have we been
referred to any cases wherein the courts have refused to
sustain a proceeding in *mandamus* upon the relation of
an elector, where the law devolved the duty upon the offi-
cer to give such notice. In *State* v. *Brown*, 38 Ohio St..

345, the court held that a proceeding in *mandamus* to compel the sheriff to give notice and make proclamation to the qualified voters of a county to elect a judge of the court of common pleas therein was properly instituted upon the relation of an elector of such county. The objection there was as here, but to this the court answered: "The relator, as a citizen of Clermont County, is interested in having the proper number of courts and judges to administer justice therein; as an elector he would be entitled to vote at the election, if an election were proper, and would be himself eligible to the office." In *Wise* v. *Bigger*, 79 Va., the question to be decided was as to the validity of an act of the legislature apportioning the representation of the state in Congress. The proceeding was for a *mandamus*, instituted upon the relation of Wise as a citizen, and the court held that when the right sought to be protected or enforced by *mandamus* was a public right, it was sufficient that the relator was a citizen, and as such interested in the execution of the law, and that in such a proceeding it was the indisputable and clear function of the court to pass upon the constitutionality of legislative acts. (See *Marbury* v. *Madison*, 1 Cranch, 172.) We must, therefore, pass this objection as untenable.

The more important feature of this case remains now to be considered. The object of the proceeding is to determine whether that portion of the act of 1878, which provides for the election of circuit judges in 1886, is constitutional. This, in effect, is to determine whether the present incumbent of the office of circuit judge of the second judicial district—and all others similarly situated—is filling an unexpired term or a term of six years by election. The question, therefore, to be decided is, whether the office of circuit judge becomes vacant on the first Monday in July, 1886. The proper determina-

tion of this question must necessarily depend in a great measure on the construction to be given to several provisions of our constitution to which we shall presently advert.    But there are some preliminary inquiries necessary to be made, which will materially aid in the explanation of that construction.

An office is defined to be a right to exercise a public or private employment, and to take the fees or emoluments thereunto belonging.    (2 Bla. Com. 36.)    It is said to be a public station or employment, conferred by the appointment of government.    (*United States* v. *Hartwell,* 6 Wall. 393; Abbott's Law Dict., tit. Office.)    In theory of the common law, the king was the source of all power and the disposer of offices.    All public offices were granted by him on the condition of good behavior, and no public office could be granted for years or a term. (Jacob's Law Dict., tit. Office.)    From whatever cause a vacancy might occur in a public office, the office reverted to the king to be again filled, or granted by him for life, conditioned on good behavior, or *durante beneplacito.*    As a consequence, there could not be a vacancy in the term of a public officer.    At common law, therefore, vacancy *ex vi termini,* means vacancy in the office, and not in the term.    And this is ordinarily the meaning attached to the word when a vacancy is spoken of; we mean that the office is empty; that it is without an incumbent who has a right to exercise its functions and take its fees or emoluments.

In this country, where written constitutions prevail, the great majority of public offices are elective, having a fixed term for a prescribed number of years, with varying provisions as to filling vacancies.    The term of an office is said to be a fixed period prescribed for holding the office.    (*People* v. *Brundage,* 78 N. Y. 407.)    And is the estate or interest which the incumbent has in it.

OREG. XIII.—25

(2 Bla. Com. 144.) When a vacancy happens by death, resignation, or removal, the term is gone, and the office reverts, as at common law, not to the king, but to the people, to be again filled upon like conditions, for the full term prescribed, unless by express provision or manifest intent, the constitution has limited or restricted the term of the new incumbent. Whether, therefore, the vacancy is in the office as at common law, and reverts to the people to fill for the full term prescribed, or so to speak, the vacancy is in the term, and limited to filling for the unexpired portion thereof, is made to depend upon the intent of the framers as expressed in the constitution. But when the constitution fixes a definite term of office, as for six years, without any limitation or reference whatever to unexpired terms, there, when a vacancy occurs, the common-law acceptation, meaning vacancy in office, must be received and applied in the construction, and when filled, the incumbent is vested with a full term of six years. A reference to some of the adjudicated cases will illustrate the application of this principle.

In *Ex parte Meredith,* 33 Gratt. 120, the question to be decided was, whether Judge Wheedon was elected and entitled to hold for the full constitutional period of six years, or for the remainder of Judge Nicoli's unexpired term. The provision of the constitution was as follows: " County judges shall be chosen in the same manner as the judges of the Circuit Court. *They shall hold their offices for a term of six years,* except the first term under this constitution, which shall be three years." The court say: " It will be observed there is no reference whatever to unexpired terms of judicial officers. . . . . Whenever elected, and for whatever purpose elected, the incumbent shall hold for six years. The language is general and positive." And the court held that the judge who had

been elected to fill a vacancy occasioned by the death of the former judge was elected for a full term of six years, and not for the unexpired term of the former judge.

In *Sansbury* v. *Middleton,* 11 Md. 313, the court was required to give a construction to the fourteenth section of the fourth article of the constitution, which provided that "there shall be in each county a clerk of the Circuit Court, who shall be elected" by the people, "and shall hold his office for the term of *six years from the time of his election,* and until a new election is held," and "in case of a *vacancy in the office* of a clerk," the judge of the court shall "appoint a clerk until the general election of delegates held next thereafter, when a clerk shall be *elected to fill* such vacancy." Bartol, C. J., in delivering the opinion of the court, said: "By the express words of the section, the term of office of a clerk to be elected by the people is declared to be for '*six years from the time of his election, and until a new election is held.*' This applies not merely to the officer chosen at the first election, but to every one who is legally elected by the people afterwards; and is conclusive of the question before us, unless there is something found in the same section, or in some other part of the constitution, which limits the term of such officer. . . . . It is true that the word *vacancy,* when used in written constitutions with reference to a public officer, sometimes signifies *an unexpired term,* but this is not necessarily so. It often relates merely to the office, without reference to the term, and in this case, the very words of the section under consideration so limit and define it. The case provided for is a vacancy in *the office of clerk,* and the election is to fill *such vacancy.* What vacancy? Clearly in the *office,* and not in the *term.*" And it was held that a clerk elected by the people to fill a vacancy under this clause of the constitution holds his office for

six years from the time of his election, and not simply for the *unexpired term* of his predecessor.

In the matter of the tenure of the judges (16 Fla. 841), in which the supreme judges expressed to the governor their construction on a provision of the constitution of that state which provided "there shall be seven circuit judges appointed by the governor and confirmed by the senate, who shall hold their office for eight years," the question to be decided was, whether a judge of the Circuit Court, appointed by the governor and confirmed by the senate, holds his office for eight years in a case where there has been a previous incumbent, who, while appointed for eight years, has filled the office only a part of the time. Westacott, answering, said: "There is nothing in this provision which limits the time of service of one appointed by reference to the time served by a previous one. . . . . Unless there is some other provision of the constitution limiting or otherwise explaining this language, it must have the usual and ordinary effect. There is nothing here establishing a term of office to exist between fixed dates of months or years. Nor is there anything having the most remote reference to an unexpired term, or to a vacancy in an office, as distinct from the office itself. There is no other provision of the constitution which changes or affects this section." And the conclusion reached was: "That a judge of the Circuit Court, appointed by the governor and confirmed by the senate, holds his office for eight full years, and that no part of a previous eight years during which another has held the office (but who has vacated it) enters into the computation of the time for which the second appointee holds."

In this state, where a similar question was involved upon a constitutional provision of like import, the holding of the court was consonant with this principle. In

*State* v. *Johns*, 3 Or. 533, the court, by McArthur, J., in construing a section of our constitution which provides for the election of, "in each county, for the term of four years, a county judge," held that in the absence of any "constitutional or statutory prohibition," a county judge, whenever elected, holds for the full term of four years. (See also *People* v. *Weller*, 11 Cal. 77; *Opinion of the Justices*, 61 Me. 603; *People* v. *Green*, 2 Wend. 266.)

Section 3 of article 7 of the constitution of this state provides that "the judges first chosen under this constitution shall allot among themselves their terms of office, so that the term of one of them shall expire in two years, one in four years, and two in six years, and thereafter one or more shall be chosen every two years, to serve for the term of six years." Section 4 provides that "every vacancy in the office of judge of the Supreme Court shall be filled by election for the remainder of the vacant term, unless it would expire at the next election, and until so filled, or when it would so expire, the governor shall fill the vacancy by appointment." Section 10 provides that "when the white population of the state shall amount to two hundred thousand, the legislative assembly may provide for the election of supreme and circuit judges in distinct classes, one of which classes shall consist of three justices of the supreme court, who shall not perform circuit duty, and the other class shall consist of the necessary number of circuit judges, who shall hold full terms without allotment, and who shall take the same oath as supreme judges." It will be perceived that the term of office prescribed by section 3 is limited and restricted in the event of a vacancy by section 4, to be filled by election for the remainder of the vacant term, unless it would expire at the next election, etc. In 1878 the legislature, conceiving that the state contained the requisite population, passed an act which

provided for the election of supreme and circuit judges in distinct classes, for the purpose of carrying into effect section 10 of the constitution. Prior to the act of 1878 the supreme judges did appellate and circuit duty under the constitution. Under that system there were two courts as now—supreme and circuit—but the judges who performed the duties of these courts were styled in the constitution supreme judges. There was no such officer as circuit judge *eo nomine.* The term of the supreme judges, who in fact performed the duties and filled both offices, was for six years, except that the supreme judges first chosen under the constitution were to allot their terms, but thereafter the term was for six years. But this term of the supreme judges in case of vacancy by death, resignation, or otherwise, was to be filled by election for the remainder of the unexpired term. This necessarily affected both offices alike, notwithstanding the allotment, when a vacancy occurred, and limited the election of the new incumbent to the residue of the unexpired term. The latter part of section 10 provides that the circuit judges shall hold full terms without allotment, and take the same oath as the supreme judges. This language implies that the term of office and the oath to be taken are already provided for when the legislature shall make operative that section. And unless the term and oath mentioned in section 10 refer to the term and oath provided by sections 3 and 21 for the supreme judges, when the constitution was adopted, there is no other term or oath to be found in that instrument to which they can apply, and the legislature has absolute discretion in the matter. It must be clear, then, that the two classes of judges—supreme and circuit—which section 10 provided were to be elected in distinct classes, were to take the same term which the constitution had provided for the supreme judges, with this difference, that the circuit judges were to take theirs without allotment.

By the act of 1878, designed to carry into effect this provision, the supreme judges were to allot their terms after election, the same as had been done by the supreme judges when they were first chosen under the constitution, and the circuit judges were to take their terms without allotment. In all other respects, the two classes of judges derive their terms from the same source, and took the same term which the constitution had provided for the supreme judges when they were invested with the duties of both offices. Now, this term, although for six years, the constitution expressly provides, in case of a vacancy for any cause, shall be filled by election for the remainder of such vacant term. To the inquiry, How long shall the new incumbent hold who has been elected to fill a vacancy? the constitution makes an unequivocal and positive answer: "For the remainder of the *vacant term.*" What term? Clearly the term provided by section 3; there is no other. The vacancy, then, is in the term, as contradistinguished from the meaning of "vacancy" at common law. It is the residue of the "vacant term" which is to be filled; so that when a vacancy occurs in the term given by section 3, and the power reverts to the people to fill, and when filled, the person elected holds, not for the full term, but the unexpired term of his predecessor.

The common-law meaning of vacancy cannot be applied here without violating a commandment of the constitution. It is unqualifiedly admitted, when a fixed term is given for a prescribed number of years, without limitation or restriction as to unexpired terms, and a vacancy occurs, the common-law acceptation must be given to it, and the person elected holds for the full term. All the authorities show this, and many of them have been cited at some length to illustrate the application of the principle. But this effect cannot be produced without ignoring or eras-

ing section 4 from the constitution. Blot out the limi-
tation which it imposes upon the term given by section
3 when a vacancy occurs, and it is freely admitted, in
the case of a vacancy, that the circuit judges, whenever
elected, would be elected and entitled to hold for the full
term of six years; but a like effect would not result to
the supreme judges upon such a contingency, for the
reason that it would violate the purpose for which the
terms of these judges were required to be allotted. But
it is argued that the object of section 4 in confining va-
cancies to be filled to the residue of the vacant term was
for the purpose of preserving the allotment prescribed
by section 3, which the supreme judges were required to
make; and as section 10 provided that the circuit judges
shall hold their terms without allotment, therefore, say
counsel, section 4 does not apply to them. The object of
an allotment undoubtedly is to provide that officers sit-
ting in the same body shall go out of office at different
periods. Hence it is claimed, to maintain and perpetu-
ate the system established by allotments, when a vacancy
occurs, or an officer of such body fails for any reason to
hold for his full term, necessarily and logically his suc-
cessor must hold for the unexpired term of his predeces-
sor. I grant this. But if such is the purpose and intention
of an allotment, there is no need of section 4 to preserve it.
The fact that it is provided that such officers composing
the body are to allot their terms when first chosen, writes
out plainly and unmistakably the intention or object to
be subserved by the allotment, and renders unnecessary
and needless any declaration or provision to preserve it.
What need, then, of section 4? Erase it from the consti-
tution, and you do not destroy the allotment or affect the
intention for which it was established. The allotment,
and the purposes it was intended to embrace, can stand
without it. Section 3 provided for the allotment of the

terms of the supreme judges, and to preserve the purposes of that allotment, vacancies occurring by reason of death or resignation would have been necessarily and legally limited to filling for the remainder of the vacant term.    (See *Baker* v. *Kirk*, 33 Ind. 524.)

The system then designed to be established and perpetuated by the allotment can be preserved and kept up without the presence or need of section 4 in the constitution.    It must then have been inserted in that instrument to cover and effect some further purpose.    What is that purpose?    Clearly, when taken in connection with the other provisions, to provide that vacancies occurring by death, resignation, or removal, in the term given by section 3, should be filled by election for the remainder of the vacant term.    The framers of the constitution did not design alone for the present, but section 10 shows that they had the future in contemplation, and were then providing a term and oath which should apply to supreme and circuit judges, when the prosperity of the state, based upon the requisite population, should require that they be elected in distinct classes.    And by these provisions they intended that whoever was entitled under the constitution to hold the term prescribed by section 3, in the event of a vacancy, should take it subject to the limitation prescribed in section 4.    They intended that when this section of the constitution should go into effect, the words " circuit judge " should be incorporated in the constitution.    The fact that section 4 reads, "vacancy in the office of the supreme judge " does not affect the question; for section 3, from which the terms of both classes of judges are now conceded to come, applies by its literal reading only to supreme judges.    Read either section literally, and neither can be made to apply to circuit judges, for there was no such judge *eo*

*nomine* before the act of 1878. So, too, with the oath to be taken. Section 10 provides that the circuit judges shall take the same oath as the supreme judges. There is no other oath to which this can refer, except the oath provided for the supreme judges by section 21, when the constitution was adopted. Whatever that oath prescribes for one, it prescribes for the other, and one is as much legally bound by it as the other. The truth is, when the act of 1878 made operative section 10 of the constitution, the effect was to write into these provisions "circuit judge." The only difference in the particular here referred to is, that the circuit judges by the provision take full terms without allotment. For this, the act of 1878 provided. When the first members of this court were chosen by election under that act, we allotted our terms. At the same time, when the circuit judges were elected, they were elected to hold full terms without allotment, and these they yet hold, unless some one of them has died or resigned, whereby a vacancy was created. In that event, the constitution has expressly provided that the vacancy "shall be filled by election for the remainder of the vacant term."

Nor is our constitution peculiar or alone in thus restricting the filling of vacancies in the office of supreme and circuit judges to the residue of the vacant term. Reference to the constitutions of other states will show that they also have provided, when a vacancy occurs in these offices, that the successor shall be elected for the unexpired term, and in some instances, when the vacancy occurs in the office of any judge. In my judgment the act is not in conflict with the constitution, and may be carried into effect without violating any of its provisions.

The judgment is affirmed.

THAYER, J., (concurring).   This case is evidently here
to obtain an advance decision of this court as to the con-
stitutionality of a part of the act of 1878, which provides
for the election of supreme and circuit judges in distinct
classes.   There seems to have been a question raised by
some parties as to whether the circuit judges elected at
the last state election hold only until the first day of
July, 1886, as provided in said act, or for four years
thereafter, and this proceeding is devised to have this
court express an opinion upon it.   The appellant, as
county clerk of Lane County, has refused to deliver a no-
tice to the sheriff of that county naming the office of cir-
cuit judge of the second judicial district of the state, to
be filled at the ensuing state election, to be held on the
first Monday of June next; and the relator, who has no
apparent interest in the matter beyond that of any other
citizen in the community, has attempted to compel him
to do so by *mandamus,* not because the refusal to deliver
such notice will affect the right to proceed and elect a
circuit judge, but to ascertain who will be entitled to the
office in case another should be elected in place of the
present incumbent.   It is a very summary mode of set-
tling constitutional questions, and brushing away the
provision of a statute liable to incommode some one un-
less removed.   But for my own part, I am utterly opposed
to making inquiry as to the constitutionality of a statute
of the state under such a proceeding.   I think it prema-
ture.   Such matters are too grave to be trifled with, and
should not be considered until the question arises that
makes it necessary.

A statute duly enacted is the highest authority known
to the law, and every legislative enactment adopted in
accordance with the forms prescribed in the constitution
is presumed to be an expression of sovereign will.   Its
validity should not be questioned, unless destructive of

the rights of a party, or injurious to public interest, and should never be declared invalid without mature deliberation, aided by all the light that can be shed upon the subject. This rushing a case into court through the means of special proceedings, and obtaining a hasty and ill-advised decision upon a matter of great magnitude, I cannot regard as proper, and am apprehensive that it will result in establishing damaging precedents. What security can the people have in the permanency of law if the solemn enactments of their legislative assembly can be so easily overthrown. Their endurance would be made to depend upon the mere caprice of the courts.

The legislature of this state, at the September session, in 1878, passed an act providing for the election of supreme and circuit judges in distinct classes, which contained the following provision: "There shall be elected on the first Monday in June, 1880, a circuit judge in each of the judicial districts, as they now exist in this state, whose terms of office shall commence on the first Monday in July, 1880, and continue for six years, and until their successors are elected and qualified; and at the general election in 1886, and every six years thereafter, there shall be elected a circuit judge in each of the said judicial districts, whose terms of office shall commence on the first Monday in July thereafter, and continue for six years, until their successors are elected and qualified." One of the members of that body who enacted the provision, and another who had participated in the proceeding, are at present members of this court, and they are solicited, in the latter capacity, to nullify what they did in the former, because, I suppose, another construction can be given the constitution, under which the act was adopted, different from that they placed upon it, and possibly more acceptable to more acute minds, though not a particle better or more practical in any view.

The legislature that adopted the act very likely construed section 4 of article 7 of that instrument, which reads: "Every vacancy in the office of judge of the supreme court shall be filled by election for the remainder of the vacant term, unless it would expire at the next election; and until so filled, or when it would so expire, the governor shall fill the vacancy by appointment"—as applying to circuit judges as well. And there are cogent reasons in favor of that construction.

The constitution provided for one set of judges to perform in the outset Supreme and Circuit Court duties. They partook of the character of both, performed circuit duty the same as the present judges, and were elected in the several districts in the same manner circuit judges are elected, though they were termed in the constitution "justices of the Supreme Court," and "judges of the Supreme Court," and performed Supreme Court duty, but seem to be regarded in the constitution as circuit judges also, and the framers of it were evidently under the impression that whenever they referred therein to the class of judges who were to perform the several functions mentioned, that the term employed would apply to circuit judges when elected in a distinct class, and that the same rules applicable to one class in the beginning would apply to both when separated.

Section 10 of article 7 of the constitution provides as follows: "When the white population of the state shall amount to 200,000, the legislative assembly may provide for the election of supreme and circuit judges in distinct classes; one of which classes shall consist of three justices of the Supreme Court who shall not perform circuit duty, and the other class shall consist of the necessary number of circuit judges who shall hold full terms without allotment, and who shall take the same oath as the supreme judges." Section 3 of article 7 of the constitution pro-

vides that "the judges first chosen under this constitution shall allot among themselves their terms of office so that the term of one of them shall expire in two years, one in four years, and two in six years. And thereafter one or more shall be chosen every two years to serve for the term of six years." This is the only provision in the instrument in regard to allotting the terms of the judges, and that applied to the judges first chosen, or justices or judges of the Supreme Court. No one would suppose that the circuit judges would allot among themselves their terms of office in the absence of said section 3, nor if said section could not have applied to them, which it did not in terms, but the convention seemed to think it would, unless they were specially exempted therefrom, and it therefore, in section 10, provided in effect that they should hold " full terms without allotment."

Now, if section 3 would have applied to said circuit judges, then certainly section 4 would, and that was allowed to stand unqualified. Again, the language of section 10 clearly indicates that the convention supposed that the judges named in sections 3 and 4 included the circuit judges thereafter elected. The words "when the white population of the state shall amount to two hundred thousand, the legislative assembly may provide for the election of supreme and circuit judges in distinct classes," imply that there were then supreme and circuit judges, but were elected in *one* class. It is reasonable that such an idea should have prevailed. Under the provisional system adopted, the functions of the two offices were blended in one. The same judge performed both, and was in fact both a supreme and circuit judge, and the convention would naturally suppose that the general provisions employed in the constitution, applicable to the justices or judges of the Supreme Court as they existed under the old regimen, would apply to both classes when formed

out of the one, unless a negative provision was made. The fact that the words "judge of the Supreme Court" are used in said section 4 signifies nothing when it is understood that they also included "judge of the Circuit Court." It is unimportant as to what the words of themselves would import; it is more important to ascertain what the convention who framed the constitution intended by them. The legislature that passed the act in question evidently construed the constitution as indicated, else it would most probably have made provisions for filling vacancies. By construing said section 4 as mentioned, avoided the necessity.

This construction may not, possibly, be the correct one, but it is reasonable and has received the sanction of able members of the bar. Messrs. Chapman & Hewitt have kindly submitted a brief in the case in which they indorse this view, and their reasoning in support of it is very thorough and convincing. The counsel for the respondent, who argued the case at the hearing, have presented strong proofs in its favor; and I cannot see any necessity nor good policy in giving it a different construction. Courts must be conservative or they will do more harm than benefit. Nor should they set themselves up as the embodiment of all the wisdom in the land. What is to be gained by rejecting the evident legislative construction in question, and adopting the one contended for by the appellant's counsel? The former is certainly reasonable, while the latter leads to an apparent absurdity. They contend that the constitution accords to the circuit judges an absolute six-years term, and when inquired of as to wherein the constitution provides such term, they refer to said section, article 7; but that section does not mention circuit judges *eo nomine*. It says: "The judges first chosen under this constitution," and the "one or more" thereafter chosen. The judges first chosen were

"the four justices" of which the Supreme Court consisted, as provided by section 2 of said article 7. The counsel cannot appropriate the term provided for "the four justices," and "the one or more" thereafter chosen, and apply it to the circuit judges elected in a distinct class, unless they assume the construction the legislature adopted, that is, that "the judges first chosen" were "circuit" as well as "supreme" judges, and that will upset their claim entirely. They will get too much, for when they concede that the original judges occupied the dual capacity before referred to, and that the term given to them extended to circuit judges that should thereafter be elected in a distinct class, they tacitly admit that every provision applicable to the former judges applies to the latter, unless inhibited by some other provision in the constitution, and the result unavoidably follows that if said section 3 applies to circuit judges, as suggested, then said section 4 unquestionably does. It is not a case where "one shall be taken and another left." Both sections must be taken or not either. Upon the other hand, if it be conceded that the legislature is authorized to provide the term of those judges, it must also be conceded that the provision of the statute referred to merely does that by providing when the election of circuit judges shall take place. It did not provide that any election should be had intermediate the six years, but it put an end to every term at certain dates beyond which an incumbent, whether holding by appointment or under an intermediate election, must be superseded.

When the legislature has a right to provide a term of office for a class of officials, it certainly has the right to make it uniform. It has done that in this case by providing particular time at which they must all be elected and enter upon their duties. It seems very evident to my mind that whichever horn of this dilemma the ap-

pellant's counsel may take, they must fail to establish the unconstitutionality of the act in question. If they attempt to maintain that the term of office of the circuit judges is provided for in the constitution, they must admit that when the framers of the constitution used the words "justices of the Supreme Court," they intended " circuit judges " as well; and that their mode of selection, qualification, and tenure of office, and the manner of filling vacancies that would apply to the former, after the two should be chosen in distinct classes, would apply to the latter unless expressly negatived by some provision of that instrument. And if, on the other hand, they admit that the term of office of circuit judges may be provided by the act of the legislature, they must necessarily fail in showing that the legislature, in adopting the act in question, exceeded its authority.

It will be noticed that the language of said section 10 of article 7 of the constitution empowered the legislature to provide for the election of the two sets of judges in distinct classes. It is a " class " of judges the election of which is to be provided for. The act to be adopted should properly apply to them collectively. A provision, therefore, that they should hold their term of office for the period of six years, that they should be elected at the general election in June, 1880, and in June of 1886, and every six years thereafter, that their term of office should begin on the first day of July of the several years at which the election takes place, seems to me to be within the power conferred; that it comes fairly within the authority vested in the legislature by the section of the constitution referred to, unless the other view suggested be the correct one. If it had been provided in the constitution by a direct clause that there should be elected in each judicial district in the state, for the term of six years, a circuit judge, at times to be regulated by

the law, and there was no other " constitutional or statutory provision on the subject," as said in *State* v. *Johns,* 3 Or. 533, it might be claimed with some reason that whenever an election occurred at which such judge could properly be elected, his election would be for a full term. But in the present case the legislature provides for the election of circuit judges as a class, and to fix the particular years in which to be elected is clearly within its power; and whether in the absence of a legislative provision, a vacancy, occasioned by the death, resignation, or removal of a predecessor, can be filled by election for the unexpired term, depends upon whether said section 4 of article 7 of the constitution is applicable or not.

Much has been said by some of the counsel on both sides in regard to " the term attaching to the office," and " attaching to the person of the judge," but I must say that I do not understand what is meant by it. That expression has been used in cases, and possibly it conveys a meaning to the minds of others, but to me it is meaningless. Under our theory of government, a civil office is simply a public trust, belongs to the public, and is instituted for public benefit, and the time a person is entitled to discharge its duties and receive its emoluments depends upon the terms of the law under which he holds it. And that can be changed by the power which enacted it, and cut off the official in the very prime of his career. I repudiate the expression as anti-republican. I have carefully considered the question before the court, and while my mind is not altogether unbiased, as I entertain a lurking notion that the proceeding was set on foot to promote personal ends, yet I have tried to view it fairly, and am of the opinion that the said part of the act is valid. Our constitution upon the subject is *sui generis,* and must be interpreted in view of its various

provisions and general scope and design. I am satisfied that the proceedings upon the *mandamus* should be enforced.

WALDO, C. J. (dissenting). It is an invariable rule of the common law that when an office granted for years reverts to the people before the expiration of the term for which it was granted, and the office is granted anew, the new incumbent takes the office without reference to the unexpired term of his predecessor, unless there be a contrary intent expressed in the grant itself, or there be some limitation imposed on the granting power. It is conceded that this rule governs the tenure of office of the circuit judges of this state; for there is not only no limitation of the rule as applied to the one in the constitution, but in fact the framers of that instrument have used affirmative language which forbids a contrary interpretation.

It will be conceded that the office of circuit judge is a constitutional office; that is, an office created by the constitution. That it was not only created by, but that it came into existence with, the constitution as an office distinct from the office of supreme judge; for two offices may be distinct though the officer be the same person. (*Crow* v. *Ramsay*, T. Jones, 11.) The supreme judges, however, formerly performed the duties of the office of circuit judge. They were, by virtue of their offices as supreme judges, judges also of the Circuit Courts. They held both offices under one title, that of judge of the Supreme Court. A full term of a judge of the Supreme Court was six years. He was *ex officio* judge of the Circuit Court for the same period. The constitution gave the legislature power, in section 10, article 7, of the constitution, to establish circuit judges as a distinct class, but without power to change the term for which the

office had been held, except that circuit judges should hold full terms without allotment. The word "term" in this connection has a precise signification. It is said in *Wright* v. *Cartwright*, 1 Burr. 285, that the word "term" in the phrase "term of years" may signify "not only the limits and limitations of time, but also the estate and interest which passeth for that time." Counsel seem to have had some sort of idea that the word had some such double signification in the constitutional provision in question. But such is not the fact. When applied to office, "the word 'term' is invariably used to designate a fixed and definite period of time." (*Speed* v. *Crawford*, 3 Met. (Ky.) 263.) The only question, therefore, open is, What is the duration of the term referred to? If it be eight, six, or any other number of years, then the plain reading of the constitution is that the circuit judges shall hold full terms for such number of years without allotment. If there were any room for construction of language apparently so plain and unambiguous, we have in *State* v. *Johns*, 3 Or. 533, a case exactly in point. This was so evident to some of the counsel that the force of that case was attempted to be avoided by a distinction supposed to exist between the two cases in this, that in our case we have an act of the legislature declaring that unexpired terms shall be filled for the remainder of the vacant term, whereas in that case there was no such act. That decision went upon the ground that Johns held a commission from the people which entitled him, *under the constitution*, to hold for the term of four years. The legislature could not therefore limit such holding to the remainder of the unexpired term, without thereby regulating the tenure of office fixed by the constitution itself. And such is the view of all the authorities.

Supreme judges took their offices originally by allot-

ment. Now, if the system which the allotment was intended to introduce shall not be, in course of time, disarranged and destroyed, it is absolutely necessary that in every case in which an office shall be vacated before the expiration of the time for which the incumbent shall have been elected, that the office shall be filled, not for a full term, but for the remainder of the term remaining unexpired of the predecessor. The reason for this is plain to all. But there is no reason why circuit judges, who like county judges are the sole judges of their courts, should take their offices by allotment, or consequently, why they should take for unexpired terms. And it would seem impossible for the English language to express briefly and yet in clearer terms the intention of the framers of the constitution that circuit judges should not take by allotment and should not take for unexpired terms, when it is declared in so many words that they should take *full* terms without allotment. They seem to have added *ex majore cautela* the word "full" to the sentence, thereby expressly excluding the terms which were not full. No circuit judge should ever take a term which was not full, which he must do were he to take for the unexpired term of a predecessor.

Therefore, if the word "term" signified, as we have seen that it does, duration merely, and not the quality or interest in the office, there can be no ambiguity whatever in the declaration that circuit judges shall hold full terms without allotment except the duration of the term which they shall hold. If the duration of the term be ascertained and fixed at a certain number of years, as we have seen that it is fixed at six years by the strongest implication, all ambiguity is removed. Circuit judges shall hold full terms of office of the duration of six years without allotment. This construction is not only that of the letter and the spirit of the

constitution, but is that which is authorized by the universal current of authority. (See Opinion of the Justices, 16 Fla. 841; Opinion of the Justices, 61. Me. 601; Opinion of Lewis, J., *Burks* v. *Hinton*, 77 Va. 41; *Sansbury* v. *Middleton*, 11 Md. 296; *People* v. *Burbank*, 12 Cal. 378; *Hughes* v. *Buckingham*, 5 Smed. & M. 832; *Attorney-General* v. *Brunst*, 3 Wis. 687; *State* v. *Johns*, 3 Or. 533, and cases cited.