Argued July 12, 1977, reversed January 31, 1978

# STATE ex rel HALEY, *Respondent,*
## *v.*
# CITY OF TROUTDALE et al, *Petitioners.*
## (TC 421 424, CA 5819, SC 25235)
### 576 P2d 1238

Brian J. Freeman of Young and Freeman, Gresham, argued the cause and filed briefs for petitioners.

Al J. Laue, Solicitor General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General.

Willard E. Fox of Allen, Stortz, Barlow & Fox, Salem, filed a brief for Oregon State Homebuilders Association as amicus curiae.

Orval Etter and Stanton F. Long of Johnson, Harrang & Mercer, Eugene, of attorneys for the City

of Eugene and Special Counsel for the Cities of Beaverton, Gladstone, Gresham, Medford, Milwaukie, Salem, Sandy, and West Linn, and Washington County, filed a brief as amici curiae.

LINDE, J.

Tongue, J., specially concurring, joined by Howell and Bryson, JJ.

## LINDE, J.

The City of Troutdale asks us to reverse a decree enjoining it from enforcing a provision of a city building code ordinance which is more stringent than a corresponding provision of regulations promulgated by the state Director of Commerce.

The legislative assembly in 1973 authorized the Director to promulgate a state building code. Or Laws 1973, ch 834, *codified in* ORS 456.750-456.890. Pursuant to this enactment, the Director in 1974 adopted standards published by the International Conference of Building Officials, as "minimum safety standards" until amended or replaced by other standards. OAR 814-26-005.[1] One section of the Structural Specialty Code[2] so incorporated by reference, section 2517(g)(2), sets a standard for the thickness of siding if not placed over a separate sheathing, that is, it sets a standard permitting "single wall" as well as "double wall" construction. Thereafter, the city enacted an ordinance requiring homes constructed in Troutdale to use sheathing under siding, *i.e.* double wall construction.[3]

---

[1] OAR 814-26-005 reads:

Until different minimum safety standards are adopted by the Department of Commerce under ORS 456, and except as added to, changed, or interpreted herein by administrative rules, the standards published by the International Conference of Building Officials, 1973 Edition, under the title Uniform Building Codes Standards and the 1973 edition of the Uniform Building Code are considered minimum safety standards. The above named publications, copies of which are attached hereto and by this reference are made part thereof, are hereby adopted as part of the State Structural Specialty Code.

[*Publications:* The publication(s) referred to or incorporated by reference in this rule is available in the office of the Department of Commerce or the Secretary of State.]

There have since been a number of amendments.

[2] The definition section of the statute uses the term "specialty code" to mean various codes governing separate aspects of construction and the term "structural code" to mean the specialty code prescribing structural standards. ORS 456.750(7), (9).

[3] City of Troutdale Ordinance No. 202 provides, in part:

Adopting standards for wall construction, and amending Section 2517(g), sub-paragraph 2 first sentence, of the Uniform Building Code

The Director initiated this suit in the name of the state to enjoin the city from enforcing this requirement. The city defended on the grounds that its ordinance did not conflict with the state regulation and that, if it did conflict, the state law cannot constitutionally displace the ordinance. The trial court entered a decree for the state, and the Court of Appeals affirmed. 28 Or App 93, 558 P2d 1255 (1977). We allowed review to consider the relationship between the state and local enactments.

I

■ There is a preliminary question whether the state's complaint stated a justiciable case for equitable relief against the city. The courts below did not examine the issue and the parties did not address it until invited to do so by this court, perhaps sharing a desire for a judicial answer to their disagreement; but that desire alone does not make a justiciable case. *See, e.g., Gortmaker v. Seaton,* 252 Or 440, 450 P2d 547 (1969); *Oregon Medical Ass'n v. Rawls,* 276 Or 1101, 557 P2d 664 (1976); *City of Hermiston v. E.R.B.,* 280 Or 291, 570 P2d 663 (1977). It was incumbent upon the courts to raise the question if the parties did not, before deciding a constitutional issue.

The suit was brought in the name of the state on the relation of the Acting Director of the Department of Commerce, demanding equitable relief against the city. The state concedes that the Department of Commerce lacks statutory authority to maintain a suit on its own. Instead, the state invokes precedents that have permitted the state to sue to enforce a "public right" on the relation of a private citizen, for instance to compel the proper administration of the election

---

of the International Conference of Building Officials, 1973 edition, is amended to read as follows:

Siding as specified in this Section shall be installed over ½″ minimum exterior grade plywood sheathing or ¾″ shiplap solid sheathing per Table No. 25-M. The double exterior wall covering shall have a minimum total thickness of ⅞″.

laws, *State ex rel Shaw v. Ware,* 13 Or 380, 10 P 885 (1886). Other decisions have recognized public officials as relators in actions brought in the name of the state to protect a right of the state, for instance in premises in its Capitol, *State ex rel Olcott v. Duniway,* 63 Or 555, 128 P 853 (1912), or have combined the two theories, such as *State ex rel Withycombe v. Stannard,* 84 Or 450, 165 P 571 (1917), in which the governor was the relator in an action to compel county commissioners to carry out the election laws. But our concern is not with the form or title of the suit; it is with the nature of the state's claim.

■ The complaint alleges merely that the defendant city has enacted and enforced an ordinance requiring "double wall" construction of buildings, that the ordinance "is in conflict with" the structural specialty code adopted by the state and its enforcement is contrary to the state's building code, that defendants "have refused to comply" with the state's code,[4] and that plaintiff has no adequate remedy at law. These allegations leave considerable doubt for what injury the state desires a remedy, at law or otherwise. They fall short of the state's interest in its own buildings, as in *Duniway, supra,* or in its funds, *State ex rel Taylor v. Lord,* 28 Or 498, 43 P 471 (1896), or in the execution by local officials of state functions imposed upon them by law, as in state elections, *Ware, supra,* and *Stannard, supra,* or welfare administration, *State ex rel State Public Welfare Commission v. Malheur County Court,* 185 Or 392, 203 P2d 305 (1949). If the only claim is that requirements which the ordinance directs to local builders are preempted by the state's directives to the same builders, this may lead to a challenge by a builder, but it does not show that the state is injured.

The question is whether the local officials have violated any duty toward the state as such. The state building code statute in this case does not impose upon

---

[4]In the context, "refusal to comply" does not allege that the city officials are constructing noncomplying buildings but that they are not limiting their demands on builders to the state's code.

[ 207 ]

local governments a legal obligation to administer the state codes. ORS 456.800. However, that section does specify how local officials are to administer the codes if they do not notify the Director that they choose not to do so. Also, the statute forbids any local government to enact or enforce any ordinance in conflict with the state's code. ORS 456.775. We conclude that the statutory scheme creates mutual relationships beyond a disagreement over separate state and local authority addressed to private parties and does give rise to a justiciable dispute in this case.[5]

## II

The Court of Appeals found the statute and the ordinance to be irreconcilable and concluded that it had to determine whether the state or the city had the predominant interest in the disputed construction standard under the test of *State ex rel Heinig v. City of Milwaukie,* 231 Or 473, 373 P2d 680 (1962). But that test expressly related to the validity of a state law concerning local modes of government, not to the validity of state and local regulations addressed to private persons. The issue decided was whether a state law imposing civil service systems on cities could escape the prohibition against legislative amendment of city charters, Oregon Constitution, article XI, section 2,[6] if the law applied to many or all cities. As the court stated the point of the decision,

we now expressly hold that the legislative assembly does not have the authority to enact *a law relating to city government* even though it is of general applicability to all cities in the state unless the subject matter of the enactment is of general concern to the state as a whole,

---

[5]While the dispute might have been more appropriate for declaratory judgment proceedings, ORS ch 28, our disposition on the merits moots the question whether a case was made for injunctive relief. *See State ex rel Taylor v. Lord,* 28 Or at 517-521.

[6]Or Const art XI, § 2:

The Legislative Assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon, . . .

that is to say, that it is a matter of more than local concern to each of the municipalities purported to be regulated by the enactment. 231 Or at 479 (emphasis added).

■ The construction standards at issue here regulate builders, not city governments. The statute contemplates but does not require that municipal officials will administer the state codes; if the municipality chooses not to do so, the state will do so through agencies of its own. ORS 456.800(4). Under the circumstances the statute can hardly be said to "enact, amend or repeal any charter or act of incorporation for any municipality, city, or town," nor to prevent the voters of Troutdale from enacting or amending their own charter, as provided in article XI, section 2.

■ As stated in *City of La Grande v. Public Employes Retirement Board,* 281 Or 137, 576 P2d 1204 (1978), decided today, this section and its companion "home rule" amendment, article IV, section 1(5), do not purport to allocate areas of substantive policy, such as building codes, between the levels of government. It is undisputed that standards for building construction are within the state's plenary power to legislate and also that they are not intrinsically beyond municipal authority. When the validity of a local ordinance is at issue, as in this case, the first question is whether the ordinance is properly enacted within the powers of the city under its charter or a statute.[7] The state does not challenge the Troutdale ordinance in this respect. Rather, the state claims that the city's "double wall" requirement is "in conflict with" or "contrary to" the state's building code. The claim is not that buildings complying with the ordinance would violate the state's regulations, but that the legislature has excluded regulations other than the state's.

On this issue the statutory provisions, taken as a whole, leave room for different conclusions. For

---

[7] Or whether it is proper "local, special [or] municipal legislation" if enacted by initiative, Or Const art IV, § 1(5).

[ 209 ]

instance, ORS 456.755(4) states that the statute or any "specialty code" adopted under it do not limit local safety standards for housing "except where the power of municipalities to enact any such regulations is expressly withheld by statute." ORS 456.775(1) provides:

> The state building code shall be applicable and uniform throughout this state and in all municipalities therein, and no municipality shall enact or enforce any ordinance, rule or regulation in conflict therewith.

Again, it is undisputed that this section requires construction throughout the state to comply with the state code. But the state interprets the words "in conflict therewith" to include "in addition thereto" while the city argues that they mean only "incompatible with" and do not exclude additional requirements. A point favoring the state's view is that the statute provides a procedure for amending a state code to meet local conditions. ORS 456.785(4).[8] On the other hand, ORS 456.755(1) describes the state code as designed only to establish "basic" uniform standards for "reasonable" safeguards for health, safety, welfare, and comfort.[9] Consistent with this view of the state code as merely "basic," the Director himself described the state regulations he promulgated as being "minimum safety standards." OAR 814-26-005, *supra* note 1.

■■ As stated in *City of La Grande, supra:*

> It is reasonable to interpret local enactments, if possible, to be intended to function consistently with state laws, and equally reasonable to assume that the legislature does not mean to displace local civil or administrative regulation of local conditions by a statewide law unless that intention is apparent. [Citing cases.] 281 Or at 148-49.

---

[8]Troutdale was denied such an amendment.

[9]The section continues that the state standards "will provide for the use of modern methods, devices, materials, techniques and maximum energy conservation." The state did not allege that Troutdale's ordinance contravenes one of these statutory objectives but only that it conflicted with the regulation adopted by the Director.

That approach is proper here. We are reluctant to assume that the legislature meant to confine the protection of Oregon residents exclusively to construction standards which it described as "basic" and which the administering agency describes as "minimum," and to place these beyond the power of local communities to provide additional safeguards for themselves. Certainly that intention is not unambiguously expressed. Until it is, we conclude that local requirements compatible with compliance with the state's standards are not preempted by ORS 456.750 *et seq.* The injunction against Troutdale's enforcement of its ordinance should have been denied.

Reversed.

**TONGUE, J.,** specially concurring.

I agree with the result reached by the majority opinion, but strongly disagree with its reasoning in reaching that result. More specifically, I agree with the holding by the majority that there is no "conflict" between the state building code and the city building code, but I disagree with the implicit, if not express, holding by the majority that this result can only be reached because the state did not "unambiguously express" an intention that the construction standards provided by the state building code be "exclusive" construction standards (rather than "minimum" standards), and that if such an intent had been "unambiguously expressed" it would have been "beyond the power of local communities to provide additional safeguards for themselves."

This result follows, according to the majority, from its opinion in *City of LaGrande/Astoria v. PERB,* 281 Or 137, 576 P2d 1204 (1978), decided today, in which the majority held that the "home rule" amendments of the Oregon Constitution, Art XI, § 2 and Art IV, § 1(5), "do not purport to allocate areas of substantive policy [such as building codes] between the levels of government." The majority also holds that this result is

consistent with the test as stated in the prior decision of this court in *State ex rel Heinig v. City of Milwaukie et al,* 231 Or 473, 373 P2d 680 (1962), which (according to the majority) was a test which "expressly related to the validity of a state law concerning local *modes of government,* not to the validity of state and local regulations addressed to private persons" involving matters of "substantive policy" such as standards for building construction.

In *City of LaGrande/Astoria v. PERB, supra,* the majority of this court held that:

"* * * [A] general law addressed primarily to substantive social, economic, or other regulatory objectives of the state prevails over contrary policies preferred by some local governments if it is clearly intended to do so, unless the law is shown to be irreconcilable with the local community's freedom to choose its own political form. * * *"

For reasons stated in my dissenting opinion in that case, such a holding is not consistent with, but is contrary, to the previous holding by this court in *State ex rel Heinig v. City of Milwaukie et al, supra.* Such a rule, as now applied by the majority to hold that "standards for building construction are within the state's plenary power to legislate," means that the Oregon legislature has power to require that all new homes in Oregon must have single wall construction even though the voters of a home-rule city in an area exposed to extreme cold or high winds may prefer to require double wall construction or to permit one who builds a home to decide for himself to use double wall construction. To me, it also follows that the Oregon legislature has power to require all new homes to be painted green, despite the fact that the citizens in a home-rule city may vote to permit a free choice of colors for all new homes and that cities can enforce local building codes with different requirements only by the grace of the Oregon legislature.

Once it is recognized that the reasoning adopted by the majority opinion compels such a result, it appears

to me such reasoning must fall from its own weight and that such a result is directly contrary to the purpose of the home-rule amendments. As stated in *Heinig* (at 481-82):

"That purpose, stated broadly, was to make operative the concept that the closer those who make and execute the laws are to the citizens they represent the better are those citizens represented and governed in accordance with democratic ideals. That objective would not be served if we should decide that the legislative assembly pre-empts the field each time it makes a statute applicable to all cities alike."

As also held in *Heinig* (at 488):

"* * * Each case requires a weighing of the state's interest against the interest of the municipality. In some instances the need for uniformity, or the benefit of a widespread application of the law, or the recognition that the matter dealt with is interrelated with other functions of the state and similar considerations will require that the statute have preference over the charter; on the other hand the charter will prevail when the advantages of local autonomy are paramount."

In my opinion, to hold, as the majority would hold, that the Oregon legislature has the power to require that all new homes must have single wall construction, or be painted green, is to hold that the Oregon legislature can intrude into areas of "substantive policy" in which the interests of the state are clearly outweighed by "the advantages of local autonomy" and that the Oregon courts are powerless to protect against such intrusions.

For these reasons I cannot agree with the basic reasoning upon which the majority would rest its decision, despite the fact that I agree that in this case there is no conflict between the city ordinance and the state statute in its present form and that, as a result, the city ordinance is a valid ordinance at the present time.

Howell and Bryson, JJ, join in this specially concurring opinion.