Submitted August 15, 2013, affirmed May 7, 2014

INTERNATIONAL ASSOCIATION OF
FIRE FIGHTERS, LOCAL 3564,
*Respondent,*

*v.*

CITY OF GRANTS PASS,
*Petitioner,*

*and*

BUREAU OF LABOR AND INDUSTRIES,
*Respondent.*

Oregon Bureau of Labor and Industries
8411; A150721

326 P3d 1214

Gregory A. Chaimov and Davis Wright Tremaine LLP filed the briefs for petitioner.

Nicole L. McMillan, Sarah K. Drescher, and Tedesco Law Group filed the brief for respondent International Association of Fire Fighters, Local 3564.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Rolf C. Moan, Assistant Attorney General, filed the brief for respondent Bureau of Labor and Industries.

Before Duncan, Presiding Judge, and Wollheim, Judge, and Schuman, Senior Judge.

SCHUMAN, S. J.

## SCHUMAN, S. J.

This case stems from a labor dispute between the City of Grants Pass and the union that represents the city's firefighters, the International Association of Fire Fighters, Local 3564 (IAFF). The dispute centers on how the city should calculate the number of hours a firefighter has accumulated for purposes of qualifying for overtime compensation. The union relies on ORS 652.080, which mandates that, for firefighters, "authorized vacation or sick leave time shall be considered as time on regular duty[,]" and therefore count toward overtime entitlement. The city argues that the statutory requirement does not apply, because the city and the union bargained over, and agreed to, a different method of calculating overtime—a method based on actual "time worked," *not* including sick leave and authorized vacation. According to the city, the Public Employees Collective Bargaining Act (PECBA), ORS 243.650 to 243.782, creates a comprehensive structure under which public employee unions can negotiate terms of employment, and it supersedes the mandate of ORS 652.080. The Commissioner of the Bureau of Labor and Industries (BOLI) issued a declaratory ruling in favor of the union, and the city appeals. For the reasons that follow, we agree with the commissioner and the union that ORS 652.080 applies and that the city must include authorized vacation and sick leave time when computing overtime wages for the union-represented firefighters that it employs.

The relevant facts are not in dispute. The City of Grants Pass operates a "regularly organized fire department" that employs firefighters on a full-time basis. Those firefighters are represented by IAFF. The parties have negotiated a collective bargaining agreement that specifies how overtime is to be calculated. The agreement states that "Regular Shift Employees," including firefighters, are to be compensated

"at the rate of 1 1/2 times their respective 56 hour per week regular hourly rate *** for overtime work under the following conditions:

"1.  All time worked as a Firefighter or Fire Corporal in excess of the regularly scheduled work shift for that employee (*e.g.*, in excess of 24 hours in any one workday).

"2. All time worked as a Firefighter or Fire Corporal in excess of 204 hours in a 27 calendar day for 24-hour duty schedule fire service non-exempt employees.

"3. Forty-Hour Employees: Overtime for 40-hour employees shall be time worked (1) in excess of 8 hours for a specific job class in a workday for employees working five 8 hour shifts, or (2) in excess of 10 hours for a specific job class in a workday for employees working four 10 hour shifts and (3) in excess of 40 hours in a work week.

"4. Employees assigned to on-call fire prevention shall be paid $100.00 a month in addition to overtime and call-back earned."

The agreement does not require the city to include time spent on authorized vacation and sick leave when determining when a firefighter has accumulated enough time to qualify for overtime wages, nor does the agreement *expressly* prohibit the city from doing so.

In June 2011, the union petitioned BOLI for a declaratory ruling, ORS 183.410, that the city was required to "include vacation and sick leave time when calculating overtime wages for firefighters employed by the City, as set forth in ORS 652.080." That statute provides:

"In computing the average or total number of hours a week for the purposes of ORS 652.060 and 652.070 [relating to overtime hours for firefighters], authorized vacation or sick leave time shall be considered as time on regular duty."

The City of Grants Pass intervened, noting that, after enacting ORS 652.080 in 1959, Or Laws 1959, ch 402, § 4, the legislature passed PECBA in 1973, Or Laws 1973, ch 536. PECBA, the city notes, permits employees to bargain collectively with their public employers. According to the city, the subsequent passage of PECBA allowed the city and the union to agree to a method of calculating overtime other than the one mandated by ORS 652.080. BOLI concluded, however, that the enactment of PECBA did not create a collective bargaining exception to the overtime requirements of ORS 652.080 and issued a declaratory ruling that the city

was "required to include authorized vacation and sick leave time when computing overtime wages for the IAFF firefighters it employs[.]" On appeal, the city seeks reversal of that ruling, arguing that "a correct interpretation of [PECBA], compels a determination that the city is not required to include vacation and sick time when calculating overtime wages for firefighters."

We review declaratory rulings for errors of law. *Simpson v. Dept. of Fish and Wildlife*, 242 Or App 287, 290, 255 P3d 565 (2011); ORS 183.482(8)(a). Where, as here, the resolution of a dispute requires us to determine the meaning of a statute, our "paramount goal" is to determine the legislature's intent. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009). We begin by examining the text and context of a statute and any relevant legislative history. *Id.* at 171-72. To aid us in that examination, we employ "rules of construction that bear directly on the interpretation of the statutory provision in context[,]" some of which are statutory—for example, the rule that counsels us not to omit what is included or insert what is omitted. ORS 174.010; *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). If the legislature's intent remains unclear, the final step is to resort to "general maxims of statutory construction." *Gaines*, 346 Or at 172.

We begin by noting that there is nothing in the plain text of PECBA that would imply that the legislature intended to create a collective bargaining exception to the requirements of ORS 652.080. Typically, when the legislature intends to create such an exception, it does so explicitly. *See, e.g.*, ORS 653.269(5)(b) (providing that public employees may be exempted from the overtime scheme established by ORS 653.268 if covered by a collective bargaining agreement that expressly waives the application of that statute); ORS 652.020(4) (allowing a labor organization to agree to "limits on the required hours of work and overtime" that are different from the limits provided for in ORS 652.020(1) and (2)); ORS 653.261(3) (providing that certain rules adopted by BOLI relating to "minimum conditions of employment" do not apply to public employees who are covered by a collective bargaining agreement prescribing rules on those same conditions).

The city, however, argues that, in enacting PECBA, the legislature created a "comprehensive regulatory scheme" the purpose of which was to encourage the resolution of labor disputes through negotiation and mediation. To accomplish that purpose, the city insists, Oregon labor laws have consistently elevated "negotiation over prescription," and that principle applies "even where the Legislative Assembly has not made the hierarchy express." Therefore, the city contends, the subsequent passage of PECBA rendered ORS 652.080 obsolete.

In support of that novel theory, the city cites the legislative history of a related statute, ORS 652.060. Ten years after the enactment House Bill (HB) 501 (1959), which created ORS 652.080, the legislature passed Senate Bill (SB) 383 (1969), which amended ORS 652.060. Or Laws 1959, ch 402 § 4; Or Laws 1969, ch 581 § 1. During a hearing on SB 383, Senator Lent stated that "units of local government refuse * * * to sit down and listen, bargain or talk about things that involve employees. There is no compulsory bargaining act for public employees in the state and firemen have no right to strike." Minutes, House Committee on Local Government, SB 383, Apr 23, 1969, 2 (testimony of Sen Berkeley Lent). For obvious reasons, the city's reliance on those comments is wholly misplaced. Senator Lent's testimony provides insight into his personal reasons for supporting SB 383 in 1969 and, perhaps, suggests that other members of that committee may have agreed with him. Those comments do not, however, help us determine why a different legislature passed a different bill that created a different statute.

Further, the meaning of PECBA must be determined according to the intent of the legislature that enacted it, not the previous legislature that enacted ORS 652.080. *State v. Swanson*, 351 Or 286, 290, 266 P3d 45 (2011). We presume that, when a legislature enacts a statute, it does so "with full knowledge of the existing condition of the law and with reference to it." *Coates v. Marion County*, 96 Or 334, 339, 189 P 903 (1920). The city's argument, then, reduces to the proposition that the PECBA legislature knew that ORS 652.080 dealt specifically with firefighters' overtime and intended to supersede that statute, but for some

reason neglected to say so. Even more fundamentally, the city urges us to read into PECBA something that is not there—a repeal of ORS 652.080. Yet the days are long gone, if they ever existed, when this court would insert language into a statute in reliance on an obscure maxim of statutory construction—*"cessant ratione legis, cessat lex,"* or "when the reason for a law ends, the law ends"—instead of applying statutorily mandated rules of construction, in particular ORS 174.010, which, as noted above, instructs that it is our job to "declare what is" and not "to insert what has been omitted, or to omit what has been inserted." Indeed, if we could rely on a policy-based maxim, it would be the one telling us that implied repeals are disfavored. *Messick v. Duby,* 86 Or 366, 371, 168 P 628 (1917).

The city relies as well on *AFSCME v. Executive Dept.,* 52 Or App 457, 628 P2d 1228, *rev den,* 291 Or 771 (1981). That case involved a dispute between several chapters of the American Federation of State, County, and Municipal Employees (AFSCME) and various state agencies. The AFSCME locals represented public employees who were prohibited from striking by law. *Id.* at 459. As an alternative to the right to strike, PECBA provides that, when a public employer and a labor organization representing strike-prohibited employees fail to reach a collective bargaining agreement, each party shall submit a "last best offer" to an arbitrator. ORS 243.742; ORS 243.746. That arbitrator has the power to issue a written opinion and order implementing whichever offer the arbitrator finds best meets the criteria listed in ORS 243.746(4).

That is precisely what happened in *AFSCME,* resulting in the arbitrator awarding "salary increases and adjustments to specific classes of workers." 52 Or App at 461. The state, however, refused to implement the award, and AFSCME filed an unfair labor practice claim with the Employment Relations Board. *Id.* The board issued an order finding that the state agencies had violated ORS 243.672(1)(g), which provides that public employers must abide by the terms of an arbitration award "where previously the parties have agreed to accept arbitration awards as final and binding upon them." *Id.* at 462.

Subsequently, both parties filed petitions for judicial review. *Id.* at 463. The state argued, as relevant here, that the board "erred in affirming the arbitration award without the approval of the plan by the Personnel Division." *Id.* at 467. The state's theory was based on statutes that gave the division the "authority to establish a state classification plan, conduct a continuing salary survey and adopt a compensation plan for all classified and certain unclassified employe[e]s." *Id.*

Ultimately, we held that the Personnel Division did not have the authority to approve the rates set by the arbitrator. *Id.* at 471. In reaching that conclusion, we reasoned that PECBA had modified

"the authority of the State Personnel Division so that, while it retains responsibility for establishing general job salary grades and classifications, the specific salary within each range which is paid to an employe[e] in a public employe[e] bargaining unit is subject to negotiation or arbitration under the terms of [PECBA]. To conclude otherwise would defeat the purpose of the public employe[e] bargaining statute."

*Id.* at 470.

The city argues that our reasoning in *AFSCME* "leads to the same result here." We understand the city to mean that, just as PECBA modified the authority of the State Personnel Division, PECBA has modified ORS 652.080, creating an implicit collective bargaining exception. We do not agree, however, that *AFSCME* leads to that conclusion.

The most obvious problem with the city's argument is that we did not hold that the enactment of PECBA implicitly amended the civil service statutes themselves. Indeed, we stated unambiguously, "There is no indication that in enacting [PECBA], the Oregon Legislature meant to repeal or alter existing civil service law." *AFSCME*, 52 Or App at 470. Rather, our decision was meant to "give meaning to the provisions of both [PECBA] and the civil service laws and to harmonize seeming conflicts between them[.]" *Id.* at 468. We gave meaning to the civil service statutes by concluding that the State Personnel Division is responsible for establishing general job classifications and salary ranges. *Id.* at

470. Likewise, we gave meaning to the provisions of PECBA by concluding that the "specific salary within each range which is paid to an employe[e]" could be determined by the collective bargaining process. *Id.* In short, the lesson that we derive from *AFSCME* is not that PECBA silently repeals pre-existing statutes, but that we should resolve conflicts between PECBA and such statutes by harmonizing them.

We take the same approach here. First, as the union points out, ORS 652.080 and PECBA can be read consistently:

> "PECBA creates general collective bargaining rights for public employees. However, PECBA does not provide that parties may bargain to exempt themselves from explicit statutory requirements on specific issues. On the other hand, ORS 652.080 creates a narrow overtime entitlement for public firefighters. This overtime entitlement is distinct and separate from PECBA's general bargaining provisions and should be read as a discrete statutory directive that collective bargaining agreements for firefighters must follow."

(Citations omitted.) We agree. Like the Supreme Court, we strive to resolve apparent statutory contradictions so as to "give effect to all." ORS 174.010. To do so, we will conclude that two provisions are in conflict only when it is not possible to comply with both simultaneously. *See State ex rel Haley v. City of Troutdale*, 281 Or 203, 211, 576 P2d 1238 (1978) (reconciling state and local building codes). Furthermore, even if we were to conclude that there was an irreconcilable conflict between the two statutory schemes, our solution would not be to insert a collective bargaining exception into ORS 652.080. Rather, we would conclude that the more particular statute, which is ORS 652.080, controls. ORS 174.020 (When it is not possible to interpret statutes so as to avoid a conflict, the intent behind a provision that is particular controls the intent behind a statute that is general.).

Affirmed.