| | |
|---|---|
| 3 | 533 |
| 13 | 389 |
| 13 | 402 |
| 13 | 404 |
| 13 | 406 |
| 22 | 346 |
| 22 | 347 |
| 10* | 890 |
| 10* | 898 |
| 10* | 899 |
| 10* | 900 |
| 29* | 791 |

STATE OF OREGON *ex rel.* J. J. WHITNEY, APPELLANT,
*v.* S. A. JOHNS, RESPONDENT,

*Appeal from Linn County.*

APPOINTMENT TO OFFICE.—The appointee of the Governor appointed to fill a vacancy in office occasioned by death or resignation, only holds said office until the first general election after the vacancy occurs.

SUPPLYING IDEM.—At that time the people may supply the office by election.

TERM.—The term of an office attaches to the person of the individual elected to fill the same.

IDEM.—Whenever a county judge is elected his term of office continues for four years, unless terminated by death or resignation.

THE facts are sufficiently set forth in the opinion of the court.

*N. L. Butler*, District Attorney, *Williams & Willis* and *Bellinger & Burmester*, for the appellant.

*R. S. Strahan* and *N. H. Cranor*, for respondent.

McARTHUR, J. In June 1866 Burr Morris having received a majority of all the votes cast, was duly elected county judge of the county of Linn in this state. He was qualified, and in July 1866 entered into said office and began to exercise the functions thereof. In September, 1866, Morris died and the Governor of the state of Oregon appointed E. R. Geary to fill the vacancy occasioned by the decease of the said Morris. In June, 1868, S. A. Johns, respondent herein, was elected county judge of said county and being duly qualified entered upon the discharge of the duties of said office in July of said year. On June 6, 1870, J. J. Whitney the relator and appellant having received a

majority of all votes cast for the competitors or candidates for the said office, and having received a certificate of election from the clerk of said county, filed in the office of said clerk the oath of office required by law. On or about July 4, 1870, Whitney demanded of Johns the possession of said office together with the books and papers thereunto belonging. To this demand Johns refused to yield. Whitney thereupon brought an action in the circuit court of the state of Oregon for the county of Linn, as provided by law, alleging Johns to be a usurper and intruder, and invoking the assistance of the law in order to oust Johns from said office, at the same time praying that the title, franchises, etc., of said office be adjudged to be in and belong to him. The court below, after due consideration, made and entered a judgment in favor of Johns. From that judgment Whitney appeals to this court alleging error.

The first question that arises for our consideration is as to the legality of the election of Johns in 1868. Section 14 of article 2 of the constitution of this state, declares, that "general elections shall be held on the first Monday in June, biennially." A general election is one at which the people may fill by election every elective office in the state not otherwise distinctly provided for by the constitution or the laws. Those offices are enumerated and set forth in section 3, p. 697, general laws. Section 11, article 7, of the constitution, fixes the time when such election shall be held. Section 16, article 5, of said instrument provides, that "when, during a recess of the legislative assembly, a vacancy shall happen in any office the appointment of which is vested in the legislative assembly; or when at any time a vacancy shall have occurred in any other state office, or in the office of judge of any court, the governor shall fill such vacancy by appointment which shall expire when a successor shall have been elected and qualified." After the decease of Morris, the then governor, acting within the scope of his constitutional authority, appointed Geary to fill the vacancy. It is contended that by virtue of this appointment, Geary had a right to continue in said office until July, 1870, the

State of Oregon *v.* Johns.

term of the office of county judge being four years, and he being appointed to fill the unexpired term of Morris. It must, in this connection, be borne in mind, that a general election occured in June 1868, the same being the one at which Johns was elected. As has before been stated, the governor's act in appointing Geary was lawful and proper, but we are of opinion, that he has no power or authority to fill any vacancy by appointment, which appointment shall extend beyond the general election next following. The power reposed in the executive by section 16 of article 5 of the constitution is not absolute, but limited and qualified, and was only reposed in him for the purpose of filling vacancies in office, until such times as the people, the repository of all power, could act thereon and fill them, as at the recurrence of a general election. The persons so appointed merely hold office temporarily, so that public business may not be retarded or disturbed by the death or resignation of the elected incumbent. As to the appointing power of the governor; it appears from the constitution and from our system of government, that it was the manifest intention of the framers and founders thereof, to restrict the same within the narrowest limits. Indeed the weight of authority very decidedly supports this theory. (*Vide People* v. *Langdon*, 8 Cal. 15; *People* v. *Mizner*, 8 Cal. 524–5; *People* v. *Whitman*, 10 Cal. 46; *People* v. *Filton*, 37 Cal. 621.) To hold that the power of the governor is so great, that he can prevent the people from selecting their officers at any time, when in so doing the fundamental law is not infringed, would be contrary to the spirit of our form of government. The court below (Boise J.), in passing upon this branch of the case argued as follows: "Section 11, article 7, (of the constitution,) provides for the appointment of county judges by election. Section 14, article 2, fixes the time when such election shall be held. And when any officer is elected for a term of years, which term extends beyond two years (the period between the general elections), and the office to which he is elected becomes vacant, the power to fill such vacancy devolves on the original appointing power, (the

people,) unless they have delegated that power to some other authority. In this case it is claimed that the governor has that power delegated to him, by section 16, article 5, which provides: "The governor shall fill such vacancy by appointment, which shall expire when a successor shall have been elected and qualified." Why are the words used "shall expire when a successor shall have been elected and qualified?" The term of the appointee of the governor must, on the theory of the plaintiff, expire at the end of the term of four years from the time the deceased incumbent was elected, and they were not used to prevent an interregnum after the expiration of such term, for that is fully provided for in section 1, article 15. These words have no signification in this place in the constitution, unless they are intended to limit the term of the appointee of the governor, to such a time as the vacancy in the office can be filled by election. The people of Oregon by their constitution made their judiciary elective, and only gave the executive power to fill temporary vacancies, which should occur between elections. If the people had intended to part with this power of appointing county judges, they would have expressed it. It cannot be inferred. No inference or intendment is ever presumed against the sovereign. Such is the universal rule for the construction of statutes, for they emanate from the sovereign power which, in this state, is the people. They appoint the executive, and he only acts by delegated authority, and this authority cannot be presumed beyond the express words of the grant. And I think the power in this case only extends to the filling a vacancy until the next general election, when the people can regularly exercise their authority in electing officers. I think it is not reasonable to presume that, where the people have reserved to themselves the appointment of an officer, they would confer on the executive the filling of a vacancy in the office, which would extend the time of the appointee beyond a general election, and deprive the whole people of a county from electing their own local officer, when they could fill it as conveniently as they appointed the original incum-

bent.    If it were not for section 16, of article 5, of the constitution, I think, there would be no pretense but what in case of a vacancy in the office of the county judge, it could be filled at the next general election, because it is a political axiom, that when an office becomes vacant the power that made the office can fill it again.    If the people have surrendered that power, it should be by express and unequivocal words.    The words are: "The governor may fill the vacancy until a successor is elected."    Vacancy in an office means the want of an incumbent at the time.    It has no reference to duration of time, and the appointment of a person to fill a vacancy *pro tempore*, does not invest him with a full term, unless the law so expressly provides.    Vacancy in an office is one thing, and term is another.    An office may be vacant and filled many times during a term of four years.

I am, therefore, of the opinion that the appointment of Geary continued only until the next general election after his appointment, and until his successor was elected and qualified.    In the arguments and conclusions reached by the court below upon this branch of the case as set forth above, we fully concur.    It follows, therefore, that the election of Johns in June, 1868, was legal.

This conclusion being reached, the next question which is presented is:  For what length of time was he chosen?  The state constitution, section 11, article 7, provides, that "There shall be elected in each county, for the term of four years, a county judge who shall hold the county court at times to be regulated by law."    We have already seen that in case of a vacancy in the office of county judge, caused either by the death or the resignation of the incumbent, the office may be filled by election at the first general election following the death or the resignation, and that the term of the appointed incumbent, the *locum tenens,* then expires.    It is also clear that in newly organized counties the office of county judge, as well as each and every other county office, is filled by election at the first general election occurring after the act of the legislature erecting and organizing a new county.    The appointees in no instance holding over.    It

is also manifest that the county judge can not be regularly and quadriennially elected in each county throughout the state. In some counties they are elected at one general election, and in others at the next general election. If there was such a thing as a regular term of office disconnected from the person of the incumbent, the elections for county judges would be regular throughout the state, and occur every fourth year from the adoption of the constitution. We are of opinion that under section 11 of article 7, just cited, the term attaches to the person. It is in the nature of a personal franchise which may be terminated by the act of the party himself. He may exercise it for four years. He may resign it. Then he yields it up to the power which conferred it upon him, and the people, if they elect a successor, confer a like franchise upon that successor, and there is no constitutional or statutory prohibition to that successor holding the office for four years, and though such election should occur before the expiration of four years from the last preceeding election, they confer the office for the full constitutional term. Hence we conclude that by virtue of the election in June, 1868, Johns became entitled to hold the office of county judge of Linn County, and enjoy all the franchises of that office for four years from the time of said election. The cases of *Coutant* v. *The People*, 11 Wend. 512; *The People ex rel. Gallup* v. *Green*, 2 Wend. 267; *The People ex rel. Aylett* v. *Langdon*, 8 Cal. 1; *The People ex rel. Ingersoll* v. *Garey*, 6 Cowen, 642; *The People ex rel. Davies* v. *Cowles*, 13 N. Y. 350; *The People* v. *Keeler*, 17 N. Y. 370; *Benton* v. *Watson*, 4 Texas, 400; *Roman* v. *Moody*, Dullam's (Texas) R. 512; Texas Digest, 386; *The People ex rel. Brodie* v. *Weller*, 11 Cal. 77, though not directly in point, are analagous in principle and fully support this conclusion. Counsel for the appellant have cited some very respectable authorities in support of a contrary theory to which, under some circumstances, we would defer, but in this case we cannot, for we are fully satisfied that the conclusion reached is in perfect accord with the spirit of our constitution and laws. The decision of the court below is therefore affirmed.