Argued November 22, 1918, reargued January 9, judgment for relator January 14, 1919.

## STATE Ex Rel. *v.* KELLAHER.

(177 Pac. 944.)

**Constitutional Law—Amendment of State Constitution—Submission and Adoption.**

1. Article II, Section 14–a, of the Constitution, adopted June 4, 1917, relative to the time of municipal elections, *held*, properly submitted by the legislature, and legally adopted, as required by Article XVII, Section 1.

**Constitutional Law—Self-executing Provisions—Municipal Elections.**

2. Article II, Section 14–a, of the Constitution, as to time of municipal elections, adopted June 4, 1917, *held* of its own force to have changed date of next succeeding municipal election of City of Portland from June 2, 1919, to November 5, 1918.

[As to self-executing provisions of the Constitution, see note in Ann. Cas. 1914C, 1116.]

**Municipal Corporations — Commissionership — Election to Fill Unexpired Term—Charter.**

3. Under Charter of City of Portland, sections 21, 30, 64, 123, commissioner appointed July 2, 1917, to fill vacancy by resignation in four-year commissionership lasting until June 30, 1919, *held* not entitled to office as against commissioner elected "at the next general municipal election," November 5, 1918, date set by Article II, Section 14–a, of the Constitution, adopted June 4, 1917, charter contemplating election to fill unexpired term.

McBRIDE, C. J., and BEAN and BENNETT, JJ., dissenting in part.

Original proceedings in Supreme Court.

In Banc.

This is an action in *quo warranto* brought in this court to determine whether the relator or the defendant is the person rightfully entitled to hold the office of commissioner for an unexpired term ending June 30, 1919. At a general municipal election held June 7, 1915, George L. Baker was elected to the office of commissioner of the City of Portland for a term of four years beginning July 1, 1915, and ending June 30, 1919. Baker resigned June 29, 1917, and on July 2, 1917, defendant Kellaher was appointed by the city

council to fill the vacancy. Sections of the city charter bearing upon the matter here in issue are as follows:

"Sec. 21—Elective Officers:

"There shall be no elective officers of the City of Portland other than the Mayor, four Commissioners and the Auditor. All said officers shall be elected at large by the legal voters of the City of Portland and for a term of four years, except as provided in Sections 30 and 123 of this Charter."

"Sec. 22—Qualifications:

"The Mayor and every Commissioner shall be a citizen of the United States and of the State of Oregon, and shall have been a resident of the City of Portland for a period of not less than three years immediately preceding the beginning of his term. If any Mayor or Commissioner shall be chosen without such qualifications or shall cease to have the same, the office shall immediately become vacant."

"Sec. 29—Vacancy in Office:

"A vacancy shall exist when the Mayor or a Commissioner fails to qualify by taking the oath and filing the bond on or before July 1 following his election or within ten days after notice of appointment to fill a vacancy, dies, resigns, is removed from office, is convicted of a felony, is judicially declared a lunatic, or is judicially convicted of corruption, malfeasance or delinquency in office. A vacancy shall also occur when the Mayor or a Commissioner absents himself from his duties or from the City of Portland without the consent of the Council expressed by ordinance for more than thirty days in any one year. The pay of the Mayor or any Commissioner shall cease after thirty (30) days' absence from the city, but the Council may grant leave of absence without pay for a further reasonable period, upon good cause being shown. No act of the Council in which any member participated whose office was vacant at the time, as herein provided, shall be for that reason invalid, unless the vacancy shall have been previously ascertained and

declared by act of the Council or judgment of a court.''

''Sec. 30—Manner of Filling Vacancies:

''If a vacancy occur in the office of Mayor or Commissioner the Council shall appoint an eligible person to fill such vacancy until the next general municipal election.''

''Sec. 123—Municipal Elections:

''A municipal election shall be held on the first Monday in June, 1913, and on the first Monday in June on each second year thereafter, which shall be known as the general municipal election. All others shall be known as special municipal elections. The first general municipal election under this Charter shall be held on the first Monday in June, 1913, for the purpose of electing a Mayor, four commissioners and an auditor. The Mayor and the two commissioners who receive the highest votes shall hold office until the first day of July, 1917, and the Auditor and the other two commissioners shall hold office until the first day of July, 1915. Thereafter every such officer shall hold office for the full term of four years. Such elected officers shall assume office the first day of July after the election.''

Section 14–a of the Constitution of Oregon adopted June 4, 1917, provides:

''Incorporated cities and towns shall hold their nominating and regular elections for their several elective officers at the same time that the primary and general biennial elections for state and county officers are held, and the election precincts and officers shall be the same for all elections held at the same time. All provisions of the charters and ordinances of incorporated cities and towns pertaining to the holding of elections shall continue in full force and effect except so far as they relate to the time of holding such elections. Every officer who, at the time of the adoption of this amendment, is the duly qualified incumbent of an elective office of an incorporated city or town shall hold his office for the term for which he was elected

and until his successor is elected and qualified. The legislature, and cities and towns, shall enact such supplementary legislation as may be necessary to carry the provisions of this amendment into effect.''

Chapter 422, p. 894, Laws 1917, provides for a special election for a vote on all measures enacted by the legislative assembly and submitted to the people, and also all amendments to the Constitution proposed by the legislature and submitted to the people, with certain exceptions which do not include the amendment here considered.

Section 1 of Article XVII of the Constitution, among other matters, provides:

''Any amendment or amendments to this constitution may be proposed in either branch of the legislative assembly, and if the same shall be agreed to by a majority of all the members elected to each of the two houses, such proposed amendment or amendments shall, with the yeas and nays thereon, be entered in their journals and referred by the secretary of state to the people for their approval or rejection, at the next regular general election, except when the legislative assembly shall order a special election for that purpose.''

After the adoption of Section 14–a, June 4, 1917, the city council of Portland passed Ordinance No. 34,638, providing that a city election should be held on November 5, 1918, to conform to the provisions of Section 14–a, and providing the manner in which said election should be conducted. At said election the relator was a candidate for the supposed vacancy from November, 1918, to June 30th following, and receiving a plurality of the votes cast a certificate of election was issued to him. Defendant claiming that he was entitled to hold the office until June 30, 1919, relator instituted this action to determine the title to the office.

Defendant contends on these grounds:

1st.   That Section 14–a was not properly submitted and adopted.

2d.   That, conceding its adoption, it is not self-executing but remains in abeyance until the city council shall pass legislation to make it effective.

3d.   That there is no authority granted either by the city charter or ordinances or general laws whereby unexpired terms can be filled by election by the voters.

JUDGMENT FOR RELATOR.

For the plaintiff there was a brief over the names of *Mr. Gus C. Moser, Mr. Walter P. La Roche,* City Attorney, *Mr. Walter H. Evans,* District Attorney, and *Mr. C. C. Hindman,* with oral arguments by *Mr. Moser* and *Mr. La Roche.*

For defendant there was a brief and an oral argument by *Mr. Wilson T. Hume.*

There was a brief submitted *amici curiae* by *Mr. A. L. Leavitt* and *Mr. R. C. Groesbeck.*

McBRIDE, C. J.—We consider these matters in their order.

1. The joint resolution proposing the amendment designated as Section 14–a was signed by the speaker of the House and president of the Senate on February 19, 1917, and on February 20th was filed with the Secretary of State.   Subsequent to the passage and signature by the presiding officers of the joint resolution but upon the same day (February 19, 1917) Senate Bill 318, providing for submission, was passed by the Senate, sent to the House and there amended and returned to the Senate, which concurred in the amendments, and the act was signed by both presiding offi-

cers, and on February 21, 1917, was presented to the Governor for his approval and by him approved, and became a law on that date. It is the last expression of the legislative will on the question of the submission of this measure and seems to be in accord with Section 1, Article XVII, of our Constitution, and we hold that the amendment was properly submitted and passed.

2. This being settled the next question that confronts us is as to the effect of the amendment upon that section of the existing charter of the City of Portland, which provides for the time of holding city elections. A constitutional provision may be self-executing as to part of its provisions and require the aid of legislation as to others. So far as it relates to the date upon which elections are to be held the amendment is definite, self-executing and mandatory. "Incorporated cities and towns *shall* hold" their elections at the time therein specified. And again, "All provisions of the charter and ordinances of incorporated cities and towns pertaining to the holding of elections, shall continue in full force and effect *except so far as they relate to the time of holding such elections.*" The implication being that as to the *time* of holding such elections such charters were repealed. There can be no logical escape from this conclusion. The requirement that cities and towns should enact such supplementary legislation, as might be necessary to carry the provisions of the amendment into effect, is also mandatory and was no doubt passed so as to require such corporations to provide the machinery necessary to carry on the election at the date specified. To prevent a vacancy occurring in any elective office between a possible earlier date for city election and the time for holding the general state election, it was

provided that elective officers then in office should hold until their successors were elected and qualified; so that, if in a city theretofore holding its election, say in June, there were elective officers whose terms expired in June, such terms were by force of the amendment extended until November 5th, and until their successors had qualified.

The power of the council to appoint a person to fill a vacancy in the office of commissioner is limited by Section 30 of the charter to an appointment to hold "until the next general municipal election." Under the charter as it stood before the change made by the amendment, that election would have been held in June, 1919, but this period was abridged by the amendment, as well as by Ordinance No. 34,638 of the City of Portland, so that the city election occurred on November 5, 1918, instead of June, 1919, thus, apparently, leaving a *hiatus* or vacancy in the office of the appointive commissioner from November 5, 1918, until July 1, 1919. There is nothing in the charter or ordinances of the city authorizing an election to fill out any portion of an unexpired term of a commissioner, excepting the provision authorizing an appointment by the council to be effective until the next regular municipal election. This provision was evidently drawn upon the theory that elections would continue to be held in June and in the event of the occurrence of an unexpired term, the place of a person serving for such unexpired term by appointment would be filled by a commissioner elected at the municipal election, who, by the provisions of the charter, would hold for four years, such term beginning July 1st. When the council made provision by Ordinance 34,638 for a general municipal election, it made no provision either by a proposed amendment to the charter, or otherwise,

for an election to supply the *hiatus* between November
5, 1918, and July 1, 1919, and it is a significant fact
that while no provision is made for filling an unex-
pired term of a commissioner by election by the peo-
ple, Section 64 of the charter, which relates to the office
of city auditor, provides that he shall be elected and
serve for a term of four years; that if a vacancy shall
occur in his office, it shall be filled by appointment by
the council until the next general election, when it
shall be filled by election for the remainder of the un-
expired term.  So it appears that the question of
"unexpired terms" was in the legislative mind at the
time the charter was adopted, and this being so the
fact that the framers provided for an election to fill
the unexpired term of the auditor and omitted to
make such provision in respect to such terms in the
office of commissioner, must be taken under the maxim
*"inclusio unius exclusio alterius"* to indicate that it
was not the intention of the framers of the charter to
provide for an election to fill an unexpired term in the
office of commissioner.  The date of election was fixed
by the charter upon the first Monday in June of each
year.  Section 123 of the charter of 1913 provided
that the mayor and the two commissioners first elected
should hold office until the first day of July, 1917, and
that the other two commissioners should hold office
until July 1, 1915, and thereafter every such official
should hold office for the full term of four years.  A
strict literal construction of the last clause would
leave a vacancy in the office of commissioner at every
subsequent election from the first Monday in June
until July 1st, but a fair construction of the section
we think indicates an intention on the part of the
framers of the charter that the commissioners in office

90 Or.—35

should hold until July 1st following the election. Indeed this would seem to be the necessary result from the provisions of Section 1, Article XV, of our Constitution, which provides that:

"All officers, except members of the legislature, shall hold their offices until their successors are elected and qualified."

This provision is discussed in *State ex rel.* v. *Simon,* 20 Or. 366 (26 Pac. 170), and there held applicable to offices created by city charter. It is true the charter there considered was one granted by the legislature before the adoption of the present amendment to Section 2, Article XI of the Constitution, commonly called the Home Rule Amendment, and that the present charter was one enacted by the people of the City of Portland subsequent to such amendment. The amendment expressly provides that charters enacted thereunder shall be "subject to the Constitution and criminal laws of the State of Oregon," so that it is conceived that Section 1 of Article XV of the Constitution is just as applicable to city offices created by initiative charters as to those created by legislative fiat. It would seem naturally to follow, therefore, in the present instance that the City of Portland having failed to provide by charter or ordinance for an election to fill the vacancy from November 5, 1918, the time fixed by the amended Constitution for holding the city election, until July 1, 1919, when Baker's successor is entitled to take the office, and Kellaher being lawfully in the office continues to hold until his successor is qualified. Even in the absence of constitutional warrant for holding over after the period prescribed by the charter, the writer is of the opinion that Kellaher would hold over *ex necessitate,* and there is respectable authority holding that where

through inadvertence no legislative provision has been made for filling an office beyond the prescribed term, the law from motives of sound public policy will imply that the incumbent may continue to exercise his official duties until his successor is elected and qualified: Throop on Public Officers, § 325; Mechem on Public Offices, § 397; *People* v. *Stratton,* 28 Cal. 44.

The intention of the framers of the charter seems to the writer to have been to provide for filling the office by appointment until the successor for the full term should have been elected and qualified. The dates when these things would happen were determined by the time of holding the election (first Monday in June), and the time when the person elected should assume the duties of his office (July 1st following), so when the charter prescribed that the person appointed to fill a vacancy should hold until the next general election, it in effect and intent prescribed that he should occupy the office until his successor was elected and qualified because as the law then stood these dates coincided. The change made by the constitutional amendment did not create two vacancies in the same office, but merely extended the duration of the vacancy to be filled, the intent of the framers of the charter being that a person appointed to fill a vacancy should hold until his successor for a full term had been elected and qualified. That intent can be best effectuated by disregarding the letter of the charter and enforcing its spirit by construing it as above indicated.

The cases of *State ex rel.* v. *Johns,* 3 Or. 533, and *State ex rel.* v. *Ware,* 13 Or. 380 (10 Pac. 885), do not support plaintiff's theory. There the Constitution provided for an election to fill the vacancy while here we have no provision whatever for such an election. In both these cases the decision turned upon whether

the persons elected held for full terms or for the unexpired portion of the terms of their predecessors. There was never any question as to the right to elect to fill an unexpired term.    Here we have a municipality with no power to do anything beyond the actual or implied grant of authority contained in its charter and in that charter we find no authority to elect a commissioner for a portion of a term.    To hold that a city has inherent power to fill vacancies by election without any legislation granting such authority, would be going further than any case which has come to the writer's notice has ventured.

It may be said that Section 125 of the charter of 1913 by implication provides for an election to fill an unexpired term.    This section among other things requires that "the auditor on or before the 15th day before every election shall prepare and file in his office a certificate containing a complete list of the offices to be filled, stating whether for a full or an unexpired term," but in the judgment of the writer this can logically refer only to an office wherever election for an unexpired term is provided for, as in Section 64, *supra.*

Section 29 of the Charter of 1913 defines a vacancy in the office of mayor or commissioner as follows:

"A vacancy shall exist when the mayor or a commissioner fails to qualify by taking the oath and filing bond on or before July 1 following his election, or within ten days after notice of his appointment to fill a vacancy, dies, resigns, is removed from office, is convicted of a felony, is judicially declared a lunatic, or is judicially convicted of corruption, malfeasance or delinquency in office," etc.

It is conceded that defendant was lawfully appointed to the office of commissioner to succeed George

L. Baker, and none of the contingencies above enumerated have happened so it logically follows that under the terms of the charter there was no vacancy to be filled in the office of commissioner when the election of 1918 was held. The proclamation of the Governor declaring the result of the vote on Section 14–a, *supra,* was dated July 2d, the same day upon which defendant was chosen as commissioner to succeed Baker. The proclamation was the last final act necessary to make the amendment effective, and the amendment became a part of the organic law from that date: Article XVII, Section 1, of the Constitution. Whether we construe the words ''from the date of such proclamation'' as exclusive or inclusive, a question which may be said to be fairly debatable, there can be little question that the adoption of the amendment found defendant in office and that if he can be said to have been in an elective office he held over until his successor was elected and qualified.

Speaking generally, the office of commissioner of the City of Portland is undoubtedly an elective office and Kellaher was an incumbent of that office. The fact that he had been chosen by the council to fill a vacancy in the office did not change the quality of the office itself. It still remained elective in character even though occupied by a person chosen to hold it temporarily by a body other than the whole electorate. So the whole question, whether Kellaher held over until July 1, 1919, depends upon whether or not there is authority in the charter for holding a special election to fill the remainder of Baker's unexpired term from November 5, 1918, to July 1, 1919. As stated before the writer fails to find such authority in that instrument. It may not be inappropriate to here call attention to Section 129 of the Charter of 1913,

which provides substantially the form of ballot to be used at such elections and the instructions to voters which shall be printed thereon. Among other directions as to what is to appear under this head is the following:

"Here state officers to be elected, as mayor and two commissioners, or auditor and two commissioners."

While the circumstance is not conclusive it is valuable and indicates it was never in the legislative mind that under any contingency more than two commissioners could be chosen at the same election. This fact, considered with the fact that in another section of the charter heretofore noticed provision was made for the election of an auditor to fill an unexpired term, has—in the judgment of the writer—great weight as indicating that it was not the intention of the committee who framed the charter or the electorate who adopted it to provide for an election to fill an unexpired term in the office of commissioner.

A judgment should be entered declaring defendant lawfully entitled to hold the office of commissioner until July 1, 1919.

BEAN and BENNETT, JJ., concur.

HARRIS, J.—I agree with both the reasoning and the conclusion of Mr. Chief Justice McBRIDE that the amendment to the Constitution, designated as Article II, Section 14-a, was properly submitted and was legally adopted; and that by its own force the amendment changed the date of the next succeeding general municipal election for Portland from June 2, 1919, to November 5, 1918. However, I am of the opinion that T. L. Perkins was legally elected and is entitled to hold the office of commissioner until July 1, 1919.

3. Whether Perkins or Kellaher is entitled to hold the contested position depends upon whether the charter authorizes an election to fill out an unexpired term. The amendment to the Constitution changed the date of the regular municipal election; but we must look to the charter to ascertain what officers are regularly elected, the duration of the terms for which they are chosen, and whether a vacancy caused by resignation involves not only a vacancy in the office but also a vacancy in the term of the person who resigned.

George L. Baker was elected a commissioner on June 7, 1915, for the full term of four years. His term commenced on July 1, 1915, and he assumed the office on that date. He resigned on June 29, 1917, and the council appointed Dan Kellaher. If Baker had continued to serve until the end of the term for which he was elected he would serve until and including June 30, 1919, and if the date of municipal elections had not been changed his successor would be elected on the first Monday in June, 1919; but because of such change in the date of municipal elections some person was elected on November 5, 1918, for the full term of four years commencing on July 1, 1919.

In addition to choosing a successor of Baker to hold for the full term of four years, which shall begin on July 1, 1919, the people of Portland, at the election held on November 5, 1918, elected T. L. Perkins to fill out the remainder of Baker's unexpired term. This unexpired term is the so-called short term and covers the period which began on November 5, 1918, and ends with June 30, 1919. It is conceded by all parties that Kellaher was legally appointed by the council and that he lawfully occupied the position of commissioner until November 5, 1918. Perkins claims that the term for which Kellaher was appointed ended on November

5, 1918, and that the charter authorized the legal
voters to elect a person of their own choice to fill out
the remainder of Baker's unexpired term. Kellaher
contends that he is entitled to hold as appointee until
and including June 30, 1919, and that the charter does
not contain any provision for filling out an unexpired
term by an election. We must look to the charter for
a solution of the problem; for the controversy must
be determined by the language of that instrument.

An examination of the charter of Portland will be
made easier if attention is first directed to certain
legal principles deemed to be controlling. The theory
of the common law involved the idea that the king was
the source of all power and the disposer of all offices;
and hence whenever a vacancy occurred in a public
office the office reverted to the king again to be filled.
All public offices were granted on good behavior and
no public office could be granted for a definite number
of years or a term; and consequently there could be
no vacancy in a term and no such thing as an unex-
pired term.

In this country where the people are the source of
all power we have laws, organic or statutory, which
provide for elective public officers with fixed terms.
Almost invariably these fixed terms begin and end on
specified dates. The term of an office means the
period prescribed for holding the office and is the es-
tate or interest which the incumbent has in it; and,
therefore, when the holder of an office dies, resigns or
is removed, his estate or interest ends, his term is
usually dissolved, and the office becomes vacant and
reverts to the people, the source from whence it came,
again to be filled by them. Since the term of an
elected incumbent ends with his death, resignation or
removal, the vacancy which results is a vacancy in the

office rather than in the term and consequently when the office reverts to the people to be filled by another election the rule is that the newly elected person holds not merely during the unexpired term of his predecessor but for the full term prescribed for the office, unless some written law, organic or statutory, by express provision or manifest intent limits and restricts the tenure of the new incumbent to the unexpired term of the previously elected incumbent. In brief, under the common law of England the resignation of an officer resulted in a vacancy in the office; but the resignation did not leave an unexpired term. In this country the resignation of an officer results in a vacancy in the office, and the general rule is that the resignation does not leave an unexpired term to be completed before a new full term can begin. This general rule, like most general rules, has its exceptions. If a written law creating an office and prescribing the term contains an express provision or clearly manifests an intent that an unexpired term shall be first completed then the resignation of an elected incumbent leaves an unexpired term which must first be filled out before the office can be filled for a full term: *State ex rel.* v. *Johns,* 3 Or. 533, 538; *State ex rel.* v. *Ware,* 13 Or. 380, 386 (10 Pac. 885). Is it the manifest intent of the charter that the unexpired term of a commissioner shall be filled out before another full term of four years shall begin? When considering the plan of the charter we may keep in mind a rule which is applicable to the facts presented here and is aptly expressed in 22 R. C. L. 552 thus:

"And it seems the term of office of one elected or appointed to fill a vacancy in a board of several officers will be held to be for the unexpired term only, where the clear intent of the creating power is that the entire board should not go out of office at once, but

that different groups should retire at regularly recurring intervals.''

If Kellaher's appointment ended with ''the next general municipal election,'' which occurred on November 5, 1918, and if the charter contemplates an election to fill out an unexpired term then Perkins and not Kellaher is entitled to hold the office of commissioner until Baker's unexpired term will have ended on June 30, 1919; otherwise Kellaher is the lawful incumbent.

The present charter of Portland was enacted by the legal voters of the city in the exercise of the initiative and is entitled:

''An Act to amend an Act of the Legislative Assembly of the State of Oregon entitled, 'An Act to incorporate the City of Portland, Multnomah County, State of Oregon, and to provide a charter therefor, and to repeal all acts or parts of acts in conflict therewith,'' filed in the office of the Secretary of State, January 23, 1903, amended by the Legislative Assembly of the State of Oregon in 1905 and subsequently amended by the people of the City of Portland, providing for a commission form of government.''

Sections 21, 30, 64 and 123 of the charter are material to the discussion and for that reason are here set down in full:

''Sec. 21—Elective officers:

''There shall be no elective officers of the City of Portland other than the Mayor, four Commissioners and the Auditor. All said officers shall be elected at large by the legal voters of the City of Portland and for a term of four years, except as provided in Sections 30 and 123 of this Charter.

''Sec. 30—Manner of Filling Vacancies:

''If a vacancy occur in the office of Mayor or Commissioner the Council shall appoint an eligible person

to fill such vacancy until the next general municipal election.

"Sec. 64—Qualifications—Filling Vacancy in Office:

"There shall be an Auditor of the City of Portland who shall possess the same qualifications required of a Commissioner and in addition those of an expert accountant. He shall be elected at the general municipal election and shall serve for a term of four years.

"If a vacancy occur in the office of Auditor the Council shall appoint an eligible person to fill such vacancy until the next general election subject to the provisions of law with respect to the recall of officers, and also subject to the provisions of this Charter declaring when a vacancy shall exist; the person appointed to fill such vacancy must within five days from the date of appointment or election qualify therefor as in the case of an officer elected for the full term or he shall be deemed to have declined and the office shall be considered vacant. Any such vacancy shall be filled at the next general municipal election for the unexpired term.

"Sec. 123—Municipal Elections:

"A municipal election shall be held on the first Monday in June, 1913, and on the first Monday in June on each second year thereafter, which shall be known as the general municipal election. All others shall be known as special municipal elections. The first general municipal election under this Charter shall be held on the first Monday in June, 1913, for the purpose of electing a Mayor, four Commissioners and an Auditor. The Mayor and the two Commissioners who receive the highest votes shall hold office until the first day of July, 1917, and the auditor and the other two Commissioners shall hold office until the first day of July, 1915. Thereafter every such officer shall hold office for the full term of four years. Such elected officers shall assume office the first day of July after the election."

It will be observed that Section 21 provides for only six elective officers: A mayor, an auditor, and four commissioners. "All said officers" shall be elected for the full term of four years, except as provided in Sections 30 and 123. Section 30 provides for an appointment to fill a vacancy and Section 123, among other things, directs that the auditor and two of the commissioners chosen at the first election shall hold for two years. It will be noticed, too, that Section 123 declares that "such elected officers" meaning the officers chosen at the first election and those subsequently chosen for the full term of four years, "shall assume office the first day of July after the election." This is only one way of saying that an officer chosen for the full term of four years cannot as such elected officer assume office before the first day of July after the election. If we now turn to Section 30 we shall see that it empowers the council to fill vacancies occurring in the office of mayor or commissioner; but this power of appointment is limited and restricted so that the vacancy is filled "until the next general municipal election." Manifestly it was the intention of the framers of the charter and of the people who voted for it to restrict the appointing power of the council within the narrowest limits: *State ex rel. v. Johns,* 3 Or. 533, 535. If the plan of the charter contemplates the filling of a vacancy by the election of a person for the full term of four years, which according to Section 123 does not and cannot commence until July 1st, after the election, it is likely that appropriate language would have been employed as was used in the legislative charter of 1903 (Special Laws 1903, sec. 38), to indicate that the appointee should hold until July 1, after the election. But Section 30 uses the words "until the next general municipal election,"

which is equivalent to saying that the term of an appointee of the council shall end on the day of the next general municipal election; and, therefore, since a person elected for the full term of four years cannot assume the office until the first day of July after the election, the necessary and inevitable result is that there is an interregnum between the date of the "next general municipal election" and the first day of July after the election; and the very fact that such an interregnum would inevitably exist every time the office of commissioner becomes vacant is of itself a sign indicating that it is the intent of the charter to provide for the selection of a person at the "next general municipal election" to serve out the unexpired term.

It must be admitted, of course, that Kellaher holds over until his successor is elected and qualified; and hence if no person has been legally elected for the so-called short term, then Kellaher would hold until and including June 30, 1919.

Unless Perkins was legally elected, there are at least two adequate reasons for the conclusion that Kellaher is entitled to continue in the office until July 1, 1919: (1) The rule of necessity; Mechem's Public Officers, § 397; and (2) a provision contained in Article II, Section 14-a, of the Constitution. Probably a third reason may be found in the language of Article XV, Section 1 of the Constitution as construed and applied in *State ex rel.* v. *Simon*, 20 Or. 365, 377 (26 Pac. 170).

It has been contended that the amendment to the Constitution, Article II, Section 14-a, is determinative of the question for decision. This contention is based upon the fact that Kellaher's term began simultaneously with the commencement of the operation of the amendment. It will be assumed, but it is not decided,

that the amendment became effective on the day the
Governor issued his proclamation. Kellaher quali-
fied and assumed the office of commissioner on July 2,
1917, and on the same day the Governor issued his
proclamation declaring that the amendment had been
adopted as a part of the Constitution. The amend-
ment did not become effective until July 2, 1917;
Article XVII, Section 1 of the Constitution; *Phy* v.
*Wright*, 75 Or. 428, 433 (146 Pac. 138, 147 Pac. 381);
and therefore Kellaher's term and the operation of
the amendment commenced on the same day; and since
the law does not generally divide a day into fractions
it may be assumed that Kellaher was an "incumbent
of an elective office" at the time of the adoption of the
amendment. It may also be assumed, for the pur-
poses of the present discussion, that Kellaher was
"elected" within the meaning of that term as con-
strued in *State ex rel.* v. *Compson*, 34 Or. 25 (54 Pac.
349). The amendment (Article II, Section 14-a),
contains the following sentence:

"Every officer who, at the time of the adoption of
this amendment, is the duly qualified incumbent of an
elective office of an incorporated city or town shall
hold his office for the term for which he was elected
and until his successor is elected and qualified."

Now, this language merely retains Kellaher in office
"for the term for which he was elected" and then con-
tinues his tenure "until his successor is elected and
qualified." If the term for which Kellaher was
"elected" ended on November 5, 1918, then he has
held for the period guaranteed by the Constitution.
The words "until his successor is elected and quali-
fied" of themselves imply that at some time some-
body can and will be elected to succeed the incumbent.
If the charter contains authority for an election of a

commissioner for an unexpired term then by electing
Perkins the people did in truth elect a successor and
therefore when Perkins qualified Kellaher's tenure
ended because his successor had been elected and qual-
ified. The amendment does not attempt to say whether
an election can or cannot be held. Indeed, the Consti-
tution assumes that an election can be held but of
course with the limitation that ''nominating and reg-
ular elections'' shall be held at the same time that
primary and general biennial elections for state and
county officers are held. The amendment to the
Constitution does not attempt to say whether the legal
voters had authority to elect Perkins to fill an unex-
pired term. The Constitution leaves the decision of
that question to the charter; and, hence the authority
for that election, if it exists at all, must be found in
the charter. The amendment merely continues the
tenure of Kellaher until such time, as under the char-
ter, a successor can be and is elected. An election was
held on the date fixed by the Constitution, and there-
fore if the charter empowered the people of Portland
to elect a person of their own choice to fill out Baker's
unexpired term then Perkins is entitled to the office
because he then becomes the ''successor'' spoken of
in the amendment. The question for decision is not
whether Kellaher would lawfully hold over if no per-
son had been elected for the unexpired term but
whether Kellaher can hold over in despite of the fact
that Perkins has been elected. Did the term for
which Kellaher was appointed end on November 5,
1918; and if the term for which he was appointed did
so end, does the charter authorize the legal voters to
elect some person to fill out the remainder of Baker's
unexpired term?

If we now pass to Section 123 we shall see that it was the clear intent of the framers of the charter that the six elective officers should not go out of office at one and the same time; but that it is the plan of the charter that the mayor and two commissioners shall be chosen at one election and that the auditor and two commissioners shall be chosen at the next election. The first municipal election was held on the first Monday in June, 1913, and at that time the two commissioners receiving the highest number of votes and the mayor were elected for four years and the other two commissioners and the auditor were elected for two years; and this section (Section 123) then declares that "thereafter every such officer shall hold office for the full term of four years." The evident purpose of this provision was to cause the retirement and election of two commissioners every two years. That such is the intent of the charter is further evidenced by the language found in Section 129 which specifies the form of the ballot to be used at the elections. Among other things this section directs that the ballot shall "here state officers to be elected, as mayor and *two commissioners, or* auditor and *two commissioners.*" If, however, a commissioner cannot be elected to fill an unexpired term but must always be elected for the full term of four years it is possible to destroy the intent and plan of the charter that two commissioners should be elected every two years.

It must be conceded that a town or city must have a charter and that only those powers which are contained in the charter can be exercised. But there is a section in the charter which enables the voters to fill an unexpired term by an election; for we read in Section 125 that:

"The auditor on or before the fifteenth day before every election, shall prepare and file in his office a certificate containing a complete list of the offices to be filled, *stating whether for* a full or *an unexpired term,* and the candidates for each office who are entitled to have their names appear upon the ballot."

It may be argued that the words "an unexpired term" in Section 125 refer exclusively to Section 64, which in express language provides for the election of an auditor to fill an unexpired term. It may be admitted that the fact that Section 64 is the only section which in direct and express language provides for an election for an unexpired term is some argument in support of the contention that the only "unexpired term" contemplated by Section 125 relates to the office of auditor alone; and yet this very same fact is also some argument in support of the theory that it is the intent of the charter that the mayor and two commissioners shall be elected for the full term of four years at one biennial election and that an auditor and two commissioners shall likewise be elected at the succeeding biennial election. Indeed, it seems to the writer that the only purpose which the framers of the charter had in mind when they inserted the last sentence appearing in Section 64 was to preserve the plan, upon which the charter was built, of electing the mayor and two commissioners at one election and the auditor and two commissioners at another election. It must be conceded that if a person is elected to fill an unexpired term for the office of auditor he would be entitled to qualify immediately after the election, because the language of Section 64 only permits the appointee to hold the office as against all persons "until the next general election" and the person elected for the unexpired term would not be obliged to wait until July

90 Or.—36

1st after the election as in the case of officers elected for the full term of four years. Section 64 and Section 30 employ exactly the same language to express the tenure of an appointee of the council; for the language of each section is "next general municipal election," and this is of itself a sign pointing to the conclusion that the term of an appointee, whether commissioner, mayor, or auditor, ends on the day of the "next general municipal election" when a successor is to be elected by the people.

Assuming that the charter contemplates that a vacancy shall first be filled by appointment and the appointee shall hold until the next general municipal election when some person shall be elected to fill out the remainder of the unexpired term, then, prior to the adoption of the amendment to the Constitution, the duration of that remainder of such unexpired term was either two years and one month or only about one month, depending upon whether the next general municipal election was the first or second election after the commencement of the term. The amendment to the Constitution worked a change in the date of municipal elections with the result that in Portland a corresponding change was effected in the period of time to be served by any person elected to fill out the remainder of an unexpired term. The amendment did not create unexpired terms where none existed before, although it did have the effect of changing the length of the period of time to be served by an officer elected to complete an unexpired term.

The conclusion here reached is supported by the opinion of Mr. Justice LORD in *State ex rel.* v. *Ware,* 13 Or. 380 (10 Pac. 885). In 1878 (Laws 1878, p. 31), the legislature, acting upon the authority of Article VII, Section 10, of the Constitution, enacted a statute providing

for the election of supreme and circuit judges in distinct classes, commencing with the first Monday in June, 1880. James F. Watson was elected circuit judge of the second judicial district in June, 1880, and held the office until February 2, 1882, when he resigned. The Governor appointed John Burnett to fill the vacancy and he held the office until the first Monday in July, 1882, when he was succeeded by Robert S. Bean, who had been elected in June, 1882. Joel Ware was county clerk of Lane County and, when preparing the election notices for the election to be held in June, 1886, he refused to name the office of circuit judge as one of the offices to be filled at such election. A proceeding was then commenced for the purpose of compelling the clerk to correct the notices of election by naming the office of circuit judge as one of the positions to be filled at the general election. The question for decision was whether Robert S. Bean had been elected for an unexpired term of four years or whether when elected in 1882 he was chosen for the full term of six years. The solution of the problem depended upon the language of the Constitution. Article VII, Section 2, of the Constitution provided for the selection of four justices who performed both circuit and appellate duty. Section 3 of the same article declared that the judges first chosen under the Constitution should:

"Allot among themselves their terms of office, so that the term of one of them shall expire in two years, one in four years, and two in six years, and thereafter one or more shall be chosen every two years, to serve for a term of six years."

Section 4 provided that:

"Every vacancy in the office of judge of the Supreme Court shall be filled by election for the re-

mainder of the vacant term, unless it would expire at
the next election, and until so filled, or when it would
so expire, the Governor shall fill the vacancy by ap-
pointment.''

It is obvious that Section 3 did no more than to fix
the term of office and to command the supreme judges
first chosen to allot among themselves their terms of
office. It will be noted that Section 4 in express and
unequivocal language directed that every vacancy in
the office of judge of the Supreme Court should be
filled by election for the remainder of the vacant term.
There as here the officers first elected held for differ-
ent terms, but their successors held for the same
terms. There as here the written law confers the
power of appointment to fill a vacancy. There as
here an elected officer resigned. There as here the
vacancy was first filled by an appointment. There as
here the question was whether the resignation left a
vacancy in the term as well as a vacancy in the office.
In all its essential features that case is parallel to this
case. Mr. Justice LORD ruled that even though Sec-
tion 4 was entirely erased from the Constitution,
nevertheless Section 3 would work the same result
that was accomplished by Section 4 so far as the
judges of the Supreme Court were concerned. We
herewith quote at length from the opinion of Mr.
Justice LORD, for the reason that the language used
by him is particularly pertinent to the facts presented
here.

''Blot out the limitation which it (Section 4) im-
poses upon the term given by Section 3 when a va-
cancy occurs, and it is freely admitted, in the case of
a vacancy, that the circuit judges, whenever elected,
would be elected and entitled to hold for the full term
of six years; but a like effect would not result to the
supreme judges upon such a contingency, for the rea-

son that it would violate the purpose for which the terms of these judges were required to be allotted. But it is argued that the object of Section 4 in confining vacancies to be filled to the residue of the vacant term was for the purpose of preserving the allotment prescribed by Section 3, which the supreme judges were required to make; and as Section 10 provided that the circuit judges shall hold their terms without allotment, therefore, say counsel, Section 4 does not apply to them. The object of an allotment undoubtedly is to provide that officers sitting in the same body shall go out of office at different periods. Hence it is claimed, to maintain and perpetuate the system established by allotments, when a vacancy occurs, or an officer of such body fails for any reason to hold for his full term, necessarily and logically his successor must hold for the unexpired term of his predecessor. I grant this. But if such is the purpose and intention of an allotment, there is no need of Section 4 to preserve it. The fact that it is provided that such officers composing the body are to allot their terms when first chosen, writes out plainly and unmistakably the intention or object to be subserved by the allotment, and renders unnecessary and needless any declaration or provision to preserve it. What need, then, of Section 4? Erase it from the Constitution, and you do not destroy the allotment or affect the intention for which it was established. The allotment, and the purposes it was intended to embrace, can stand without it. Section 3 provided for the allotment of the terms of the supreme judges, and to preserve the purposes of that allotment, vacancies occurring by reason of death or resignation would have been necessarily and legally limited to filling for the remainder of the vacant term. (See *Baker* v. *Kirk,* 33 Ind. 524.)''

This doctrine also finds support in *State ex rel.* v. *Mayor of La Porte,* 28 Ind. 248; *Parcel* v. *State,* 110 Ind. 122 (11 N. E. 4). See also the cases cited in note to *State ex rel. Fish* v. *Howell,* 50 L. R. A. (N. S.) 345.

As the writer reads the charter, Section 29, which declares when a vacancy shall occur in the office of mayor or commissioner, is not controlling or decisive. The same definition which expressly applies to the office of mayor and commissioner is, by Section 64, expressly made applicable to the office of auditor; and, hence, whatever would constitute a vacancy in the office of commissioner would also constitute a vacancy in the office of auditor. The resignation of a commissioner creates a vacancy just as the resignation of an auditor creates a vacancy. This vacancy in the office of auditor is temporarily filled by appointment until the next "general election" and in the office of commissioner until the next "general municipal election." The vacancy is the same in both cases, since it results from the same cause, and is temporarily filled by the same council and is so filled for a period ending at the same time; and in the case of the auditor this same vacancy which is temporarily filled by appointment until the next general election is at such election permanently filled by the voters for the remainder of the unexpired term; for the language of Section 64 is: "*Such vacancy* shall be filled at the next general municipal election for the unexpired term." And in the case of a commissioner it is this same "such vacancy" which, as it appears to the writer, the voters are to fill at the next general municipal election. After all, however, the intent, plan and purpose of the charter should be determined by a consideration of the instrument as a whole rather than by any mere implication carried by or any bare inference to be drawn from an isolated section of the enactment; and when the charter is taken by its four corners and is read in the light of the rule which was applied in *State ex rel.* v. *Ware* and which has been approved in other jurisdic-

tions, it leads the writer to the conclusion that the voters had the right themselves to choose for themselves a commissioner to complete Baker's unexpired term.

If it is admitted that the words, "Here state officers to be elected, as mayor and two commissioners, or auditor and two commissioners" appearing in Section 129 present a circumstance which "indicates it was never in the legislative mind that under any contingency more than two commissioners could be chosen at the same election," then there is no possible escape from the conclusion that Perkins is entitled to be seated, unless it can be said that an appointee can invariably hold until the end of the unexpired term. A regular election is held biennially; and this is expressly defined by Section 123 as "the general municipal election." If from the time of the first election each officer had served his full term then two commissioners would have been elected regularly every two years; and of course Section 129, when referring to "two commissioners," means the two commissioners who are to be chosen at each election for the full period of four years. Now if the legislative mind intended that under no contingency could more than two commissioners be elected at the same election for the full term of four years then one of only two possible conclusions must be accepted: (1) The people have the right to elect a commissioner to fill out an unexpired term; or (2) the appointee always holds until the end of the unexpired term. This can be demonstrated by an example. At the first election held in June, 1913, two commissioners were elected for terms of four years and two for terms of two years. The term of each commissioner began on July 1, 1913. Two retired from office at the end of June 30, 1915, and the

other two at the end of June 30, 1917. If each of the
four commissioners served out his full term then two
were elected in June, 1915, and two in June, 1917.
Now, suppose that on August 1, 1913, after they had
been in office only one month, the two commissioners
who had been elected for four years, had resigned.
The result would be a vacancy in each of the two
offices. The council would have filled the vacancies by
an appointment. The "next general municipal elec-
tion" was held in June, 1915; and at that time two
commissioners were regularly elected for the full term
of four years to succeed the two commissioners who had
been elected at the first election in 1913 for the period
ending June 30, 1915. If Section 129 indicates that
the legislative mind intended that under no contin-
gency shall more than two commissioners be chosen
at the same election for the full term of four years
then of necessity the voters were obliged to wait until
June, 1917, before they could elect two commissioners
for the full term of four years to take the places of
the commissioners who had resigned on August 1,
1913. If the vacancies had been filled in June, 1915,
by the election of two commissioners for the full term
of four years then no commissioner at all would have
been elected in 1917 and at the next general municipal
election held November 5, 1918, four commissioners
would have been elected. On the facts of the sup-
posed case the plan of the legislative mind to elect two
commissioners every two years for the term of four
years could have been preserved by only one of two
possible methods: (1) The voters could have elected
two persons to serve out the unexpired term of the two
commissioners who resigned; or (2) the appointees of
the council could have continued to serve until July
1, 1917. No one has yet advanced the argument that

the appointee of the council is entitled always and under all circumstances to serve until the end of the unexpired term. To sustain any such argument it is necessary under the facts of the supposed case to say that an appointee can as a matter of right hold not only until "*the next* general municipal election" but also, until the second "next general municipal election." The most that has ever been claimed is that the appointee holds until the first day of July following the "general municipal election" which comes next after the appointment. If the appointees who assumed the duties of the office were not entitled to fill out the unexpired terms by holding to the end of June 30, 1917, then we are driven to the alternative conclusion that the people were entitled to fill the vacancies by choosing two persons to fill out the two unexpired terms. If the voters could have filled the vacancies under those supposed facts then they were empowered to elect a person of their choice to complete Baker's unexpired term.

If it is admitted that a vacancy occurring one month after the commencement of a four year term is filled by appointment by the council "until the next general municipal election," and that the people at that election are authorized to elect a person to fill out the remainder of the term, which remainder would in that event amount to more than two years, then by the same token if the vacancy occurs between the first and second elections after the beginning of the term, the appointee would only hold until such second election because it is the "next general municipal election" after the appointment and the people can at that time choose some person to fill out the remainder of the term whether such remainder is one month, as it would have been before the adoption of the amendment to

the Constitution, or whether it is eight months as it will now be because of the time fixed by the Constitution for holding municipal elections. In other words, if the people would have had the right at the June, 1917, election to elect some person to hold the office until July 1, 1919, on the assumption that Baker had resigned and Kellaher had been appointed on August 1, 1915, then by the same reasoning the voters were empowered on November 5, 1918, to elect Perkins to hold until July 1, 1919. The right to elect a commissioner to complete an unexpired term does not depend upon the duration of such unexpired term. It is true that the filling of an unexpired term of one month is not a matter of much importance, and it is probable that seldom if ever would any candidates appear for unexpired terms of one month; but it is also true that the filling of an unexpired term of more than two years is a matter of much importance. And while it may not be a matter of much moment whether Kellaher or Perkins holds until July 1, 1919, yet the time may come when it will be a matter of much importance whether an appointee can hold for three years and eleven months. Every section and every word of the charter which authorizes an election to fill an unexpired term of more than two years is equally applicable to an unexpired term of one month or eight months. Whenever it is admitted that, if Baker had resigned on August 1, 1915, and Kellaher had been appointed by the council on that date, the people could have elected some person in June, 1917, to fill out Baker's unexpired term, then by that admission one is forced by the inexorable compulsion of logic to concede that the people have the same power to elect some person to fill out an unexpired term of eight months.

The period during which an appointee of the council is authorized to occupy the office of commissioner is limited by the words "until the next general municipal election." These words of limitation are plain and unambiguous and signify "to; up to"; they do not mean "after"; and, therefore, an appointee is named to hold "up to" and not "after" the next general municipal election. Any conclusion which denies to the voters the right at such "next general municipal election" to choose some person to take the place of the appointee, does and must, as it seems to the writer, ignore the meaning of the words "until the next general municipal election." On the other hand, as the writer views it, the conclusion that the voters are empowered to elect some person to fill out an unexpired term gives full effect to the unambiguous meaning of the word "until," does not strain or ignore a single word found in the charter, gives full effect to every word in the organic law of the city, does not read into the charter any language not found there, does not disturb the harmony of the charter or mar its symmetry, does not destroy the manifest plan and intent of the charter that different groups of officers should be elected at regularly recurring intervals, and preserves the purpose of the charter that the six elective offices shall whenever and as long as possible be filled by elected rather than by appointed officials.

The defendant contends that Perkins has not been domiciled in Portland for the time required by the charter. It is not necessary to discuss the facts in detail but it is enough to say that on the facts as presented in the record Perkins' domicile is within the boundaries of the City of Portland and has been for the time required.

The judgment should be to the effect that T. L. Perkins is entitled to hold the office of commissioner until and including June 30, 1919.

BENSON, J., concurring.

BURNETT, J. (Concurring Specially).—Under the Portland charter the rule is that the offices of mayor, commissioner and auditor are to be filled by election at large by the legal voters of the city: Section 21. The principal exception is that upon a vacancy occurring in the office of mayor or commissioner the council shall appoint an eligible person to fill the vacancy until the next general municipal election: Section 30. The further exception as outlined in Section 123 has in a sense served its purpose in the initial classification of the commissioners so that an entire change in the personnel of the council will not be effected at any general election. It must, however, be counted as a factor in the investigation as indicating that there may be an election to fill an unexpired term of a commissioner so as to preserve that adjustment. In my judgment, it is not necessary that there should be a special ordinance providing for elections to fill vacancies. In that respect the charter is self-executing in effect. The election machinery is at hand and available. The power of the council to appoint sustains the tenure of the appointee only until the next general municipal election. The power of election then comes automatically into operation. The appointee has enjoyed all possible benefits of the exception to the rule which requires that officers shall be elected by vote of the people at large. To continue him longer in office would be to legislate judicially and impair the authority of the people to choose their own officers.

For these reasons, on the questions discussed at the hearing, I concur in the opinion of Mr. Justice HARRIS.

JOHNS, J. (Concurring Specially in the Opinion of Mr. Justice HARRIS).—It is the theory of our form of government that the people have the right to elect their own officials. While, for certain purposes and under certain conditions, the power to fill a vacancy in office is conferred by the people upon a designated officer or board, yet I do not believe that in the present instance the people who conferred that power ever intended that the appointment should be extended over and beyond the date of the next general municipal election after the vacancy was so filled. It was the purpose and intent of the people to reserve the right to fill any unexpired term of such vacancy at the first ensuing election. In the case of *State ex rel. Whitney* v. *Johns,* 3 Or. 533, the syllabus lays down the rule that:

"The appointee of the Governor, appointed to fill a vacancy in office occasioned by death or resignation, only holds said office until the first general election after the vacancy occurs. * * At that time the people may supply the office by election."

In the opinion it is said:

"The people of Oregon by their Constitution made their judiciary elective, and only gave the executive power to fill temporary vacancies, which should occur between elections. If the people had intended to part with this power by appointing county judges, they would have expressed it. It cannot be inferred. No inference or intendment is ever presumed against the sovereign. Such is the universal rule for the construction of statutes, for they emanate from the sovereign power which, in this state, is the people. They appoint the executive, and he only acts by delegated authority, and this authority cannot be pre-

sumed beyond the express words of the grant. And I think the power in this case only extends to the filling a vacancy until the next general election, when the people can regularly exercise their authority in electing officers. I think it is ·not reasonable to presume that, where the people have reserved to themselves the appointment of an officer, they would confer on the executive the filling of a vacancy in the office, which would extend the time of the appointee beyond a general election, and deprive the whole people of a county from electing their own local officer, when they could fill it as conveniently as they appointed the original incumbent.''

On this principle, I concur in the result of the opinion of Mr. Justice HARRIS.